COMMONWEALTH of Pennsylvania,
Appellee,

v.

Laureano M. MANUEL,
M.D., Appellant.

Superior Court of Pennsylvania.

Argued Oct. 22, 2002.
Filed Jan. 27, 2004.
Reargument Denied April 2, 2004.

3

Thomas M. Marsilio, Wilkes Barre, for appellant.

Jerome T. Foerster, Asst. Dist. Atty., Harrisburg, for Com., appellee.

BEFORE: JOHNSON,

MONTEMURO,* and TAMILIA, JJ.

OPINION BY JOHNSON, J.:

¶ 1 Dr. Laureano M. Manuel (Manuel) appeals from the judgment of sentence entered following a jury's determination of his guilt on two counts of Medicaid Fraud, 62 Pa.C.S. § 1407(a)(6); one count of Prescription of a Controlled Substance Not in Accordance with Treatment Principles, 35 Pa.C.S. § 780–113(a)(14); and two counts of Prescription of a Controlled Substance to a Drug Dependent Person, 35 Pa.C.S. § 780–113(a)(13). Manuel asserts that the trial court erred when it failed to order a hearing to determine Manuel's competency to stand trial and that his trial counsel was ineffective for failing to request such a hearing. Manuel also claims that the trial court improperly acted as an advocate for the Commonwealth during the court's direct questioning of a witness. In a question of first impression to this Court, Manuel asserts that the evidence supporting his conviction for Prescription of a Controlled Substance not in Accordance with Medical Treatment Principles was insufficient because the Commonwealth's case lacked appropriate expert medical testimony. Finally, Manuel contends the court erred in imposing a mandatory sentence based on the aggregate weight of the prescribed pills. For the foregoing reasons, we affirm the judgment of sentence.

¶ 2 After the filing of a criminal complaint against Manuel in October 2001 and Manuel's waiver of a preliminary hearing, the Attorney General of the Commonwealth of Pennsylvania issued a criminal information consisting of ten separate counts relating to pharmaceutical prescriptions written by Manuel. A three-day jury trial commenced on September 9, 2002.

¶ 3 During an in-chambers conference with the Honorable Peter Paul Olszewski prior to jury selection, Manuel's trial counsel asserted that he had concerns regarding Manuel's competency to stand trial based on a July 2002 evaluation by a psychiatrist, Dr. Abram Hostetter. Judge Olszewski did not admit Dr. Hostetter's report into evidence as he concluded that without Dr. Hostetter present, it was hearsay. According to counsel, Dr. Hostetter opined that Manuel did not "realize the seriousness of the pending charges nor was he in a position to help defend himself against the charges," and that "Manuel's problem with judgment and cognitive skills may actually go to his competency." N.T., 9/9/02, at 11–12. According to counsel, Dr. Hostetter recommended "a neuropsychological examination to make a determination as to whether or not [Manuel] was actually suffering from dementia or Alzheimer's." N.T., 9/9/02, at 12. Trial counsel then stated that Manuel refused to undergo the examination based on his belief that the results would negatively affect his ability to maintain his medical license and that Manuel prohibited trial counsel from pursuing a defense based on such infirmity. Trial counsel also indicated that Manuel had not returned several calls that counsel had made to Manuel in the weeks prior to trial and had "participated zero in his own defense" and failed to assist in providing character or expert witnesses. N.T., 9/9/02, at 14. Furthermore, during the one conversation trial counsel had with Manuel, Manuel allegedly indicated that he had retained other counsel; however, when trial counsel called to verify this information the attorneys indicated by Manuel denied such representation. Judge Olszewski then noted that trial counsel was not making any motions. Although Manuel was not present during the

* Retired Justice assigned to the Superior Court.

in-chambers conference, he does not contest the trial counsel's assertions regarding Dr. Hostetter's report or Manuel's interactions with counsel.

¶ 4 After the conclusion of the in-chambers conference and prior to jury selection, Manuel addressed the court, apologizing for arriving late to trial and requesting, pursuant to a prior letter, permission to change attorneys. After a brief discussion between Manuel and the court, the court, emphasizing that trial would begin in five minutes, offered Manuel the option of proceeding with his attorney or *pro se.* Manuel chose representation by his attorney.

¶ 5 During trial, the Commonwealth called six individuals who testified concerning prescriptions which they obtained from Manuel. Additionally, the Commonwealth called a number of witnesses including a drug and alcohol licensing specialist supervisor with the Department of Health, an investigator with the Drug Enforcement Administration, a pharmacist, and two medical doctors.

¶ 6 During the testimony of one of the medical experts, Dr. John Brady, the court directly asked the following series of questions, the last of which Manuel asserts was improper:

By the Court:

Q. In your initial direct examination by [the Deputy Attorney General for the Commonwealth], she asked you a series of questions and you rendered a series of opinions, all to a degree of medical certainty.

A. Yes.

Q. Subsequent or after that, defense counsel asked a series of questions, and you provided him with a series of answers.

A. Yes.

Q. Did those answers in cross-examination in any way change or alter or modify any of the opinions you initially rendered?

A. No.

N.T., 9/11/02, at 623. Trial counsel requested a side bar and placed his objection to the last question on the record claiming that it "was more a prosecutorial question than it was a judicial question." N.T., 9/9/02, at 624. Judge Olszewski noted the objection but made no curative instruction. At the conclusion of the three-day trial, the jury found Manuel guilty on five of the ten counts.

¶ 7 Prior to the sentencing hearing, Manuel obtained his present counsel. On October 15, 2002, Judge Olszewski sentenced Manuel to nine to eighteen months' incarceration for Count Two, Medicaid Fraud; nine to eighteen months' incarceration for Count Six, Medicaid Fraud to run consecutive to Count Two; three to six months' incarceration for Count Seven, Dispensing Drugs to a Drug Dependent Person to run consecutive to Count Six; thirty-six to seventy-two months' incarceration for Count Eight, Delivery by a Practitioner to run consecutive to Count Seven; and three to six months' incarceration for Count Ten, Dispensing Drugs to a Drug Dependent Person to run consecutive to Count Eight, for an aggregate sentence of five to ten years' incarceration.

¶ 8 On October 28, 2002, Judge Olszewski denied Manuel's motions for a new trial and for modification or reconsideration of sentence. Manuel then filed his notice of appeal and, pursuant to the trial court's order, his Concise Statement of Matters Complained of on Appeal. Judge Olszewski then filed his extensive opinion pursuant to Pennsylvania Rule of Appellate Procedure Rule 1925(a).

¶ 9 Manuel presents the following questions for our review:

1. Whether the Trial Court should have ordered a competency hearing and/or psychiatric examination to determine [Manuel's] competency to stand trial and/or whether Trial Counsel was ineffective for failing to request a competency hearing?

2. Whether the Trial Court erred in playing the role of advocate for the Commonwealth during the trial?

3. Whether the evidence was sufficient to convict [Manuel] of the crime of prescription of a controlled substance, not in accordance with medical treatment principles?

4. Whether the trial court erred in imposing a mandatory sentence for prescription of a controlled substance, not in accordance with medical treatment principles?

Brief for Appellant at 3.

■ ¶ 10 Preliminarily, the Commonwealth asserts that Manuel waived the portion of his first question relating to trial court error because he failed to raise such claim in his Concise Statement pursuant to Rule 1925(b). Brief for Appellee at 13. In his Concise Statement, Manuel claims that if it is determined that the in-chambers discussion constituted a motion for a competency hearing by Manuel, then the trial court erred in denying such motion. Defendant's Concise Statement Under Pa. R.A.P. 1925(b) at 4. He now asserts that the court should have acted *sua sponte*. Brief for Appellant at 19. We find these issues to be distinct. Therefore, pursuant to Rule 1925(b), Manuel's issue asserting trial court error for failing to order a competency hearing is waived. *See Commonwealth v. Lord*, 553 Pa. 415, 719 A.2d 306, 309 (1998) ("Any issues not raised in a 1925(b) statement will be deemed waived.").

■ ¶ 11 Manuel asserts ineffective assistance of trial counsel ("IAC") relating to counsel's failure to file a motion requesting a competency hearing. Brief for Appellant at 19. Prior to addressing the merits, we must determine whether we may address the merits of this IAC claim on direct appeal in light of the Pennsylvania Supreme Court's decision in *Commonwealth v. Grant*, 572 Pa. 48, 813 A.2d 726 (2002), and its progeny. The Supreme Court has recently issued a series of opinions relating to our ability to review IAC claims on direct appeal. In *Grant*, the Court held that IAC claims should be addressed on collateral review and should be dismissed without prejudice on direct appeal in part because this Court's ability to review IAC claims is hampered by the absence of a trial court's findings and conclusions relating to IAC issues. *Id.* at 737–39. The Supreme Court's holding in *Commonwealth v. Bomar* provided an exception to *Grant* where an evidentiary record exists as to the claims and the trial court has had the opportunity to review the IAC claims. *See Commonwealth v. Bomar*, 573 Pa. 426, 826 A.2d 831 (2003). In *Commonwealth v. Belak*, however, the Court held that *Bomar* did not apply to a case where the IAC claims were first raised in the 1925(b) statement and where the trial court refused to consider the IAC claims based on a lack of an evidentiary record. *Commonwealth v. Belak*, 573 Pa. 414, 825 A.2d 1252, 1255 n. 6 (2003). Following *Grant*, *Bomar* and *Belak*, this Court had the opportunity recently to address a situation similar to the case at bar. In *Commonwealth v. Watson*, where IAC claims were first raised in a 1925(b) statement, we concluded, "We will review claims of ineffective assistance of counsel on direct appeal only where the trial court has addressed the claims on the merits after having determined that the existing record is sufficiently developed for resolution of

the claims." *Commonwealth v. Watson*, 835 A.2d 786, 794 (Pa.Super.2003). Following our decision in *Watson*, as we are presented with the trial court's analysis of the IAC claims and a record which the trial court found sufficiently developed, we conclude that we may address Manuel's IAC claims on this direct appeal.

 ¶ 12 As in *Watson*, when reviewing IAC claims on direct appeal, we "review that court's conclusion that relief was not warranted by determining if its findings are supported by the record and its decision is free of legal error." *Id.* (quotations and alterations omitted). To prevail on an IAC claim,

> the appellant must overcome the presumption of competence by showing that: (1) his underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interests; and, (3) but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the challenged proceeding would have been different. A failure to satisfy any prong of the test for ineffectiveness will require rejection of the claim.

*Id.* at 795.

¶ 13 In relation to the first prong, Manuel asserts that his trial counsel was ineffective because "it is of arguable merit that [Manuel] was not competent to stand trial." Brief for Appellant at 26. On the second prong, Manuel first states that trial counsel apparently based the decision not to make a motion requesting a competency hearing on the belief that he was bound by Manuel's order not to present such a motion, but then states that "if a client is not competent, then he cannot knowingly and intelligently decide not to pursue a competency hearing." Brief for Appellant at 26. Finally, Manuel states that "as a matter of law a trial cannot [c]onstitutionally proceed

with an incompetent defendant as a matter of due process, hence the client is prejudiced per se." Brief for Appellant at 26.

¶ 14 The trial court concluded that there was "no reasonable basis upon which trial counsel could have requested or demonstrated Dr. Manuel's alleged incompetence." Trial Court Opinion (T.C.O.), 3/14/03, at 7. To support this conclusion, the trial court notes that Manuel "chose not to be evaluated for a very rational and reasonable purpose, i.e. '[that it] would be counterproductive to his attempts to maintain a medical license....'" T.C.O., 3/14/03, at 6, (citing N.T., 9/9/02, at 13). Additionally, the court noted "a salient exchange between [Manuel] and the Court" relating to Manuel's pre-trial request to obtain new counsel:

> This exchange not only reveals that [Manuel] was obviously aware and oriented with regard to the date, time and place, it also reflects [Manuel's] awareness of his request, pursuant to [a prior letter to the court], to change counsel. It further indicates an understanding by [Manuel] that the relationship between lawyer and client is 'solved with teamwork'. (N.T.[, 9/9/02, at] 32). Finally, it plainly reflects [Manuel's] reasonable and rational decision to proceed to trial represented by [trial counsel] and not attempt to represent himself.

T.C.O., 3/14/03, at 5–6. Furthermore, "absolutely nothing about [Manuel's] demeanor, behavior, conduct or response to the Court's question ... would even remotely suggest he was incompetent to proceed." T.C.O., 3/14/03, at 6. The trial court also stated that trial counsel was not ineffective for abiding by Manuel's wishes: "Decisions regarding strategy, consequences and the exercise of [c]onstitutional rights are ultimately and exclusively the choice of a defendant. Further, Counsel cannot require expenditure of resources to pursue an ave-

nue which the client refuses to accept." T.C.O., 3/14/03, at 6. The court concluded, "Far from suggesting incompetence, the record amply demonstrates that [Manuel] was keenly aware of his status and the potential consequences of pursuing certain courses of action." T.C.O., 3/14/03, at 6.

¶ 15 In analyzing Manuel's IAC claims regarding counsel's failure to request a competency hearing, we note the importance our Supreme Court has placed on the necessity of a competent defendant and the appropriate standard for a competency determination:

> A defendant's competency is an absolute and basic condition of a fair trial, and conviction of a legally incompetent defendant violates his constitutionally guaranteed due process rights. Section 402(a) of the Mental Health Procedures Act, provides that a defendant is legally incompetent if he or she is substantially unable to understand the nature or object of the proceedings against him or her or to participate and assist in his or her defense. Stated otherwise, the relevant question is whether the defendant has sufficient ability at the pertinent time to consult with counsel with a reasonable degree of rational understanding, and have a rational as well as a factual understanding of the proceedings.

*Commonwealth v. Appel,* 547 Pa. 171, 689 A.2d 891, 898–899 (1997) (internal citations, quotations, modifications and footnotes omitted). However, a defendant's "apparent lack of cooperation and failure to heed ... counsel's advice [does] not establish a prima facie case for legal incompetency." *Commonwealth v. Mayer,* 454 Pa.Super. 353, 685 A.2d 571, 573 (1996).

¶ 16 Although we agree with Judge Olszewski's ultimate conclusion that Manuel's IAC claim must fail, we disagree with his suggestion that the underlying claim has no merit because counsel can not pursue a competency hearing over a client's objection. The relevant statute clearly provides for a situation where counsel acts against the wishes of the defendant/client in requesting a competency hearing. Section 7402(c) states, "Application to the court for an order directing an incompetency examination may be presented by an attorney for the Commonwealth, a person charged with a crime, *his counsel,* or the warden or other official in charge of the institution or place in which he is detained." 50 P.S. § 7402(c) (emphasis added). The following subsection provides that in cases where the defendant objects to such a hearing the moving party must show that there is a *prima facie* question of incompetency. *See* 50 P.S. § 7402(d). Furthermore, this court has addressed a situation where counsel has requested a hearing in opposition to his client's wishes. *See Mayer,* 685 A.2d at 572. Therefore, we find that this claim has arguable merit.

¶ 17 We conclude, however, that the IAC claim must fail with regard to the second prong of the IAC test relating to whether counsel had a reasonable basis for not pursuing the hearing. *See Watson,* 835 A.2d at 795. Trial counsel had a reasonable basis for not pursuing the competency hearing based on Manuel's stated interest in protecting his medical license.

¶ 18 In his second question, Manuel asserts that the trial court erred when it asked the Commonwealth's expert witness, Dr. John Brady, a series of questions, the last of which Manuel categorizes as prosecutorial. Brief for Appellant at 27. The following is the question at issue: "Did those answers in cross-examination in any way change or alter or modify any of the opinions you initially rendered?" N.T., 9/11/02, at 623. Manuel asserts that this question "gave the impression to the jury,

that all the cross-examination was meaningless and irrelevant as it did not shake the expert's opinion or testimony." Brief for Appellant at 30. Furthermore, Manuel suggests that "after the second medical expert witness, the Commonwealth took the Court's 'prompting' from [Dr. Brady's testimony] and asked the same question the Court had asked, whether it had changed that witness's opinion." Brief for Appellant at 30. He therefore claims that the question had the "impact of allowing the jury to disregard all the cross-examination of the Commonwealth['s] expert witnesses." Brief for Appellant at 30.

¶ 19 As we have previously noted, "[i]t is always the right and sometimes the duty of a trial judge to interrogate witnesses. However, questioning from the bench should not show bias or feeling or be unduly protracted." *Commonwealth v. Purcell*, 403 Pa.Super. 342, 589 A.2d 217, 223 (1991). Furthermore, "[a] new trial is required ... only when the trial court's questioning is prejudicial, that is when it is of such nature or substance or delivered in such a manner that it may reasonably be said to have deprived the defendant of a fair and impartial trial." *Id.* at 224 (quotations omitted).

¶ 20 The Commonwealth asserts that Manuel waived this question by failing to raise it in his 1925(b) statement. Brief for Appellee at 16. In his 1925(b) statement, Manuel asserted that trial counsel was ineffective for failing to ask for a curative instruction or mistrial following the question, whereas now he is asserting trial court error. We will address the merits of this question because we have the benefit of the trial court's analysis of this issue. In analyzing the IAC issue presented in Manuel's 1925(b) statement, the trial court specifically found that it did not err in asking the questions. T.C.O., 3/14/03, at 19–23.

¶ 21 The trial court determined that it did not err in asking the questions in the context of the expert's testimony and in light of the principles relating to judicial questioning of witnesses. T.C.O., 3/14/03, at 23. We agree. Manuel contests one question amid three days of testimony, which resulted in a transcript in excess of 900 pages. Furthermore, in light of the extensive evidence presented by Dr. Brady and the other witnesses, both expert and lay, we cannot conclude that this single question was "of such nature or substance or delivered in such a manner that it may reasonably be said to have deprived the defendant of a fair and impartial trial." *Purcell*, 589 A.2d at 224.

¶ 22 In his third question, Manuel asserts a question of first impression. He claims that, without expert medical testimony, the evidence was insufficient to support a conviction for prescribing patient Jeremy Berezich a controlled substance not in accordance with medical treatment principles. Brief for Appellant at 35–40. He asserts that expert medical testimony should be required because such testimony is required in medical malpractice cases to establish that a physician has deviated from "good and acceptable medical standards." Brief for Appellant at 37 (quoting *Rauch v. Mike–Mayer*, 783 A.2d 815 (Pa.Super.2001); citing 40 Pa.C.S. § 1303.512 (relating to expert witness qualifications in a medical professional liability action)). Manuel suggests that it would be "unconscionable to provide greater protection to a physician's pocket book than to his liberty." Brief for Appellant at 38.

¶ 23 Preliminarily, we note that, "[i]n reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial, and all reasonable inferences derived therefrom, when viewed in

the light most favorable to the Commonwealth as the verdict winner, supports the jury's finding of all of the elements of the offense beyond a reasonable doubt." *Commonwealth v. Champney*, 832 A.2d 403, 408 (Pa.2003). However, as Manuel asserts a question of law relating to the necessity of expert medical witnesses, our scope of review is plenary. *See Lewis v. Phila. Newspapers, Inc.*, 833 A.2d 185, 190 (Pa.Super.2003).

¶ 24 The offense in question is defined as follows:

**§ 780–113. Prohibited acts; penalties**

(a) The following acts and the causing thereof within the Commonwealth are hereby prohibited:

\* \* \* \*

(14) The administration, dispensing, delivery, gift or prescription of any controlled substance by any practitioner or professional assistant under the practitioner's direction and supervision unless done (i) in good faith in the course of his professional practice; (ii) within the scope of the patient relationship; *(iii) in accordance with treatment principles accepted by a responsible segment of the medical profession.*

35 P.S. § 780–113(a)(14) (emphasis added).

¶ 25 We find Manuel's argument relating to the requirements for medical expert qualification in malpractice cases unavailing. We note that while the Legislature has defined such expert qualification requirements for civil malpractice cases, it has not placed such requirements on cases involving the prosecution of physicians who feloniously prescribe drugs. The proper place for Manuel's argument is before the Legislature and not this Court.

¶ 26 Section 780–141 also states that the act "shall be so applied as to effectuate its general purpose to make uniform the law with respect to the subject of this act among those states which enact similar legislation." 35 P.S. § 780–141. Although the issue of the necessity of medical expert testimony relating to the crime of Prescription of a Controlled Substance not in Accordance with Treatment Principles, 35 P.S. § 780–113(14), is one of first impression before this Court, numerous other courts evaluating claims under similar controlled substance statutes have considered the question and determined that expert testimony is not always necessary. *See United States v. Word*, 806 F.2d 658, 662–63 (6th Cir.1986) (collecting cases and stating "it has become well established in other circuits that expert testimony is not required" in cases involving prescriptions in violation of the federal Controlled Substances Act, 21 U.S.C. §§ 801–904); *State v. Moody*, 393 So.2d 1212, 1214–15 (La. 1981) (noting that states, including Louisiana, have modeled their controlled substances acts on the federal act and agreeing with federal jurisprudence that a jury may find that a doctor violated such act based on testimony of lay witnesses). We note that the federal courts and the Louisiana Supreme Court applied statutes which required the prosecution to prove that a doctor prescribed controlled substances either not "for a legitimate medical purpose" or not "in the usual course of professional practice," whereas the Pennsylvania statute requires proof that the prescription is not "in accordance with treatment principles accepted by a responsible segment of the medical profession." *See id.;* 35 P.S. § 780–113(a)(14). We conclude, however, that the logic of the courts applies in relation to the Pennsylvania statute:

The [cases] indicate that while expert testimony as to "legitimate medical purpose" and "in the usual course of profes-

sional practice" may be helpful to a jury, there are cases in which the lay testimony is so clear that no expert testimony is required to determine that the defendant's actions were not for a legitimate medical purpose nor in the course of professional practice.

*Word,* 806 F.2d at 663.

██ ¶ 27 We are aware that there may be cases which will present medical or factual complexities that will require expert medical testimony in order for a jury to determine that a physician's practices are such that no reasonable segment of the medical profession would find the practices acceptable. Therefore, we are unwilling to say that expert medical testimony will *never* be necessary prior to a conviction under Section 780–113(a)(14). We are also, however, unwilling to enunciate a rule requiring expert medical testimony in *all* cases. We conclude that expert testimony is not required, in cases such as this, where the other evidence in the case allows the factfinder to conclude, beyond a reasonable doubt, that the treatment would not be accepted by any reasonable segment of the medical profession.

¶ 28 In the case at bar, the Commonwealth's expert witnesses did not testify specifically that the prescriptions given to Jeremy Berezich were not "in accordance with treatment principles accepted by a responsible segment of the medical profession." *See* 35 P.S. § 780–113(a)(14); *see also Commonwealth v. Paolino,* 837 A.2d 1216, 1223–28 (Pa.Super.2003). The Commonwealth, however, presented expert medical testimony by two doctors who testified as to appropriate prescribing practices and testified that the prescriptions provided to other patients and the treatment practiced by Manuel were either inappropriate or "below accepted medical standards." Furthermore, Jeremy Berezich testified regarding the procedure by which he obtained prescriptions from Manuel which the trial court summarized as follows:

Mr. Berezich advised Dr. Manuel that he attended a methadone clinic; that Dr. Manuel agreed to write methadone or dolophine prescriptions to him for addiction purposes; that Dr. Manuel failed to monitor Mr. Berezich's ingestion of the substance as was done at the methadone clinic; that Dr. Manuel prescribed clonodine for cravings; [ ] that Dr. Manuel prescribed valium after Berezich simply requested same; that Dr. Manuel insisted on prescribing methadone during a second office visit in spite of the fact that Berezich indicated he did not want methadone and that Berezich never complained of back pain yet Dr. Manuel placed on the prescription that it was in fact "for back pain". Mr. Berezich's description of office visits to Dr. Manuel resemble more a trip to a deli counter where instead of a customer requesting a pound of American cheese, a patient requests and receives a script for controlled substances.

T.C.O., 3/12/03, at 29–30. In light of this testimony, we conclude that the evidence was sufficient to support the conviction relating to the prescriptions written for Berezich. The prescriptions, when viewed in a light most favorable to the Commonwealth, were not "in accordance with treatment principles accepted by a responsible segment of the medical profession." 35 P.S. § 780–113(a)(14).

¶ 29 In his final question, Manuel asserts that the court erred in imposing a mandatory sentence for prescription of a controlled substance not in accordance with medical treatment principles. Brief for Appellant at 40–46. Although Manuel asserts that he is challenging the legality of his sentence, he nonetheless provides a concise statement of the reasons relied

upon for allowance of appeal pursuant to Pennsylvania Rule of Appellate Procedure 2119(f) for challenges to the discretionary aspect of sentencing. Brief for Appellant at 40–41. We need not determine whether Manuel has presented a substantial question under Rule 2119 because Manuel's question challenges the legality of a mandatory sentence which the trial court had no discretion in imposing. *See Commonwealth v. Shaw*, 560 Pa. 296, 744 A.2d 739, 742 (2000).

¶ 30 Manuel asserts that the imposition of the mandatory sentence was in error because the calculation which triggered the mandatory sentence was based on the aggregate weight of the pills rather than the weight of the controlled substance. Brief for Appellant at 42. Each of the eighty pills prescribed to Berezich contained ten milligrams of the controlled substance. The aggregate weight of the eighty pills used to fill the prescription totaled sixteen grams. Brief for Appellant at 42. Manuel concedes that the statute states that the sentence is based on the aggregate weight. He argues, however, that the aggregate weight should apply not to prescription drugs but only to street drugs where "[a] person dealing in such drugs knows that they are cut with other substances [that increase] the weight and thus the profit from the sale of these illegal street drugs." Brief for Appellant at 42. Alternatively, he argues that if the trial court properly utilized the aggregate weight, then the statute unconstitutionally violates his due process rights because he could not control the actual weight of the pills used by the pharmacy to fill the prescription. Brief for Appellant at 43.

¶ 31 The trial court imposed the mandatory sentence pursuant to 18 Pa.C.S. § 7508(a)(2)(ii), which states as follows:

§ 7508. **Drug trafficking sentencing and penalties**

* * * *

(2) A person who is convicted of violating section 13(a)(14), (30) or (37) of The Controlled Substance, Drug, Device and Cosmetic Act where the controlled substance or a mixture containing it is classified in Schedule I or Schedule II under section 4 of that act and is a narcotic drug shall, upon conviction, be sentenced to a mandatory minimum term of imprisonment and a fine as set forth in this subsection:

* * * *

(ii) when the aggregate weight of the compound or mixture containing the substance involved is at least ten grams and less than 100 grams; three years in prison and a fine of $15,000 or such larger amount as is sufficient to exhaust the assets utilized in and the proceeds from the illegal activity . . . .

18 Pa.C.S. § 7508(a)(2)(ii).

¶ 32 As our Supreme Court concluded in relation to the imposition of a mandatory sentence based on a calculation of the aggregate weight of a substance including pure cocaine, "The language chosen by the legislature, however, is controlling." *Commonwealth v. Corporan*, 531 Pa. 348, 613 A.2d 530, 532 (1992). We have no reason to doubt that the Legislature was fully aware that the mandatory sentence scheme utilizing "the aggregate weight of the compound or mixture containing the substance involved" specified in Section 7508(a)(2)(ii) would be applied to pharmaceutical pills as Section 7508(a)(2)(ii) states that it applies to subsection 13(a)(14) relating, *inter alia*, to the prescription of controlled substances by physicians. Furthermore, we note that the federal courts analyzing similar lan-

guage are unanimous in their determination that a "sentencing court must include the weight of the entire pharmaceutical pill and not just the weight of the active narcotic ingredients." *United States v. Limberopoulos*, 26 F.3d 245, 252 (1st Cir.1994) (collecting cases). Therefore, we find no error in the trial court's use of the aggregate weight of the pills used to fill the prescription written by Manuel.

¶ 33 We also find unavailing his assertion that the statute is unconstitutional. He asserts that the statute is unconstitutional because the length of the sentence imposed is dependent on the pills used to fill the prescription as the weight of the pills may vary depending on the brand used by the pharmacist. Brief for Appellant at 42–46. He argues that the statute is vague because "a defendant would not be aware of the precise penalties he would be facing for violating the law." Brief for Appellant at 44. Manuel quotes the United States Supreme Court's test, which states that a statute is unconstitutionally vague if it "fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute, [or] because it encourages arbitrary and erratic arrests and convictions." Brief for Appellant at 44 (quoting *Papachristou v. City of Jacksonville*, 405 U.S. 156, 162, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972)). He further argues that it was unconstitutional "under the same rationale that *ex post facto* laws are unconstitutional" in that "it punishes a person for an act that was innocent at the time it was committed." Brief for Appellant at 45. He argues that the "innocent act," the pharmacist's decision as to which pill should be used to fill the prescription, would determine the severity of the sentence. Brief for Appellant at 45.

¶ 34 Preliminarily, we note that Manuel wrote the prescription for the brand name drug Dolophine but specifically allowed for the prescription to be filled by a generic drug. N.T., 10/15/02, at 12–13. The generic methadone pills actually used to fill the prescription were calculated to weigh sixteen grams. The brand name pills, in fact, would have weighed more as they would total twenty-two grams. N.T., 10/15/03, at 14. Either type of pill would have exceeded the ten-gram threshold amount for the mandatory sentence imposed. *See* 18 Pa.C.S. § 7508(a)(2)(ii). Manuel fails to assert any type of pills that could have filled the prescription and also weighed less than ten grams. Therefore, we need not reach Manuel's constitutional questions, as the sentence imposed based on the generic pill would not have differed from a sentence imposed using the brand name pill.

¶ 35 For the foregoing reasons, we affirm the judgment of sentence.

¶ 36 Judgment of Sentence **AFFIRMED**.