J-A07030-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| CINNAMON PURVIS-GILLIAM | : | |
| | : | |
| Appellant | : | No. 416 EDA 2021 |

Appeal from the Judgment of Sentence Entered September 11, 2020
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0006807-2018,
CP-51-CR-0006808-2018

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| CINNAMON PURVIS-GILLIAM | : | |
| | : | |
| Appellant | : | No. 417 EDA 2021 |

Appeal from the Judgment of Sentence Entered September 11, 2020
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0006807-2018,
CP-51-CR-0006808-2018

BEFORE: DUBOW, J., McLAUGHLIN, J., and KING, J.

MEMORANDUM BY McLAUGHLIN, J.:                    **FILED JANUARY 6, 2023**

Cinnamon Purvis-Gilliam appeals from the judgment of sentence entered following her convictions for two counts of simple assault and one

count of attempted strangulation.[1] Purvis-Gilliam contends the trial court was biased against her. We affirm.

Following an incident involving two victims – Purvis-Gilliam's husband, from whom she was separated, and his girlfriend – Purvis-Gilliam was arrested and charged. She proceeded to a bench trial in September 2019, and the trial court found Purvis-Gilliam guilty of the above-referenced offenses at separate dockets for each victim. **See** Docket No. 6807-2018, Docket No. 6808-2018. The trial court sentenced her to an aggregate term of six to 12 months' incarceration followed by two years of reporting probation on September 11, 2020. Immediately after imposing sentence, the court stated the time in which Purvis-Gilliam could file a post-sentence motion or an appeal as follows: "Now, you have ten days to file a post-sentence motion with the [c]ourt. You have 30 days to file an appeal to a higher court." N.T., Sentencing Hearing, 9/11/20, at 51.

Purvis-Gilliam filed a post-sentence motion 11 days after sentencing, on Tuesday, September 22, 2020. **See** Post-Sentence Motion for Reconsideration, filed 9/22/20. The motion was timestamped 12:00:59 AM. Six days later – *i.e.*, less than 30 days after sentencing – the court noted at a bail hearing that Purvis-Gilliam's post-sentence motion was pending. It said that once it decided the post-sentence motion, Purvis-Gilliam would have to file a "timely" appeal or her appellate rights would be "extinguished":

---

[1] 18 Pa.C.S.A. §§ 2701(a) and 901(a) (of 2718(a)(1)), respectively.

> There's a motion for reconsideration that I still have to review, but if a bail -- if an appeal is not filed in a timely manner, after the motion for reconsideration is either heard or denied, then bail will be revoked at the time that the appellate rights will be extinguished by not filing.

N.T., Motions Hearing, 9/28/20, at 5. The court did not comment on the timeliness of the post-sentence motion or explain the effect of an untimely post-sentence motion on the appeal deadline.

The trial court entered an order that denied the post-sentence motion by operation of law on January 25, 2021. Even though the motion listed both docket numbers, the order listed only one of them – number 6807-2018. *See* Order, filed 1/25/21.[2] Purvis-Gilliam filed the instant notices of appeal on February 18, 2021. She asserts the following issue: "Did the court below violate [Purvis-Gilliam's] right to a fair trial by demonstrating bias against [Purvis-Gilliam]?" Purvis-Gilliam's Br. at 7.

Before addressing the merits of Purvis-Gilliam's appellate claim, we first address our jurisdiction, which we may do *sua sponte*. *See Commonwealth*

_____

[2] The clerk of court only entered an order at one docket, No. 6807-2018, even though the post-sentence motion listed both dockets. Due to this omission, "we shall regard as done that which ought to have been done," specifically that the clerk would have entered an order denying the post-sentence motion by operation of law at both dockets. *See Commonwealth v. Carter*, 122 A.3d 388, 391 (Pa.Super. 2015) (regarding as done that which ought to have been done where clerk of courts failed to note service of order denying post-sentence motion by operation on law in violation of Pa.R.Crim.P. 114(C)(2)); *Commonwealth v. Howard*, 659 A.2d 1018, 1021 n.12 (Pa.Super. 1995) (reaching merits of claim and holding "we shall regard as done that which ought to have been done," where appellant's post-sentence motion was denied by operation of law, clerk of courts failed to enter an order, and appellant filed notice of appeal within 30 days of denial).

***v. Burks***, 102 A.3d 497, 500 (Pa.Super. 2014). If a defendant files a timely post-sentence motion, the appeal period does not begin to run until the motion is decided. Pa.R.Crim.P. 720(A)(2); Pa.R.A.P. 903(a). Except in circumstances not applicable here, a defendant must file a post-sentence motion within ten days of imposition of sentence. Pa.R.Crim.P. 720(A)(1). An untimely post-sentence motion does not, without more, toll the appeal period. ***See Commonwealth v. Green***, 862 A.2d 613, 618 (Pa.Super. 2004) (*en banc*).

Because the deadline for filing an appeal is jurisdictional, we lack authority to extend the deadline. ***See Commonwealth v. Patterson***, 940 A.2d 493, 498 (Pa.Super. 2007). However, where the failure to file a timely appeal arises from a "breakdown" in court processes, we may entertain an untimely appeal. ***Id.*** Instances in which we have found a such a "breakdown" include cases where the trial court has either failed to advise the appellant of post-sentence and appellate rights or given incorrect advice. ***Id.***

Purvis-Gilliam's post-sentence motion was untimely, albeit by one minute. It therefore did not toll the running of the appeal period. She thus had until October 12, 2020, to file a timely notice of appeal. Pa.R.A.P. 903(a) (providing that a notice of appeal from an order shall be filed within 30 days); 1 Pa.C.S.A. § 1908 (whenever the last day of the appeal period falls on a weekend or on any legal holiday, such day shall be omitted from the computation of time). She did not file the instant appeal until February 18, 2021.

This Court issued a rule to show cause directing Purvis-Gilliam to explain why we should not quash this appeal. She replied that this is an instance of a "breakdown" in the judicial system. *See* Petitioner's Response to Rule to Show Cause, filed 7/29/21, at ¶¶ 9-11. Her counsel states that he relied on the court's statement at the bail hearing. He maintains he was directed by the trial court to file an appeal after the post-sentence motion was denied. *Id.* at ¶¶ 6, 7 (citing N.T., Motions Hearing, at 5).

We agree that there was a "breakdown" in judicial processes sufficient to permit us to entertain this appeal. At the bail hearing – within 30 days of sentencing – the trial court said that once it had ruled on Purvis-Gilliam's post-sentence motion, she would need to file a "timely" appeal. It did not note that an untimely post-sentence motion, such as Purvis-Gilliam's, would not toll the time to appeal. It also did not note that the post-sentence motion she filed was in fact late. It instead said that it would rule on her motion and then she could timely appeal. The court entered an order denying the motion on January 25, 2021, three months after Purvis-Gilliam's actual time to appeal had expired. The combined circumstances here — defense counsel's filing the post-sentence motion one minute late, such that he believed the motion was timely; the judge's incomplete explanation at sentencing; and the court's subsequent misleading statement at the bail hearing, which was during the appeal period — constitute a "breakdown" under this Court's precedents sufficient to allow us to entertain this appeal. *See Patterson*, 940 A.2d at 499-500.

We now turn to the issue Purvis-Gilliam presents before this Court. She claims that the trial court exhibited its bias against her in numerous ways. Though she did not raise this issue before the trial court, we decline to find waiver. **See Commonwealth v. Hammer**, 494 A.2d 1054, 1059-60 (Pa. 1985) (holding the failure to object to questioning by a judge, "will not under all circumstances render the allegation of judicial impropriety unavailable for appellate review"), *overruled on other grounds by* **Commonwealth v. Grant**, 813 A.2d 726 (Pa. 2002)).

A trial judge may in a criminal case ask questions that will aid the jury. **See Commonwealth v. Roldan**, 572 A.2d 1214, 1215 (Pa. 1990). "It is always the right and sometimes the duty of a trial judge to interrogate witnesses. However, questioning from the bench should not show bias or feeling or be unduly protracted." **Commonwealth v. Manuel**, 844 A.2d 1, 9 (Pa.Super. 2004) (cleaned up). Even so, not "[e]very unwise or irrelevant remark made in the course of a trial by a judge" warrants a new trial. **Commonwealth v. Enix**, 192 A.3d 78, 83 (Pa.Super. 2018) (quoting **Commonwealth v. Goosby**, 301 A.2d 673, 674 (Pa. 1973)). A new trial is required only if the judge's questioning or remarks "may reasonably be said to have deprived the defendant of a fair and impartial trial." **Manuel**, 844 A.2d at 9 (citation omitted).

Purvis-Gilliam argues that four instances demonstrate the trial judge's bias. First, she cites the trial court's interactions with a Commonwealth witness during direct examination. She maintains that the court's tone with

the witness was in "stark contrast to when [Purvis-Gilliam] was on the stand." Purvis-Gilliam's Br. at 25. She opines that the court "gracefully and compassionately explained the rules and requirements of the court" to the witness. *Id.* at 26.

> Q [Defense Counsel]: No, she was not invited over? Let us know what happened to get in a situation where you guys encountered each over [sic]?
>
> A: Yes. I just wanted to start off by saying that –
>
> [Defense Counsel]: Objection.
>
> The Court: So, sir, something that can be really frustrating is that, the way it works in court. You probably have a lot of things you want to say, right?
>
> The Witness: Yes.
>
> The Court: The way it has to work. You can only respond to the questions from the attorneys, otherwise they're going to ask that it be stricken from the record, and we'll be here a lot longer than anyone wants to be.
>
> The Witness: I understand.
>
> The Court: What will make things easier is, [the Commonwealth] is going to ask you questions. He's an experienced question [sic], and then the other attorney will have a chance to. Just make sure you answer their questions. Go ahead.

N.T., Trial, 9/27/19, at 16-17.

Next, Purvis-Gilliam directs our attention to what she claims to be an interruption of defense counsel during the cross-examination of another witness.

> Q [Commonwealth]: So, Ms. Perkins, you heard some testimony when you saw some security camera footage and –
>
> The Court: You can't tell anyone to define what happened before. It's a completely improper question.

*Id.* at 48.

She also points us to a second instance in which the court interrupted defense counsel's cross-examination of a witness.

> A [Commonwealth Witness]: No it wasn't about that.
>
> Q [Defense Counsel]: You didn't go to court –
>
> The Court: Let him answer the question, before you ask him another one.

*Id.* at 43-44.

Finally, she contrasts the court's actions in the foregoing instances with its interaction with her during her direct examination. During her testimony, she claims that "[t]he court did not intervene to prevent interruption of [Purvis-Gilliam's testimony,] or argumentative statements from the prosecutor in lieu of questions." Purvis-Gilliam's Br. at 31. She argues that the court's tone toward her was remarkably different and that the court reacted with anger and frustration. *Id.* She also alleges that unlike the cross-examination of the Commonwealth's witness, the court did not interject when the Commonwealth interrupted her testimony.

> Q [The Commonwealth]: Why did you not wait for the police to get there? Why did you not just go to the police station, make the report, or go with the police – why did you have to get there before they got there?

A [Purvis-Gilliam]: I don't understand your question.

The Court: I think he's asking. While [sic] did you knock on the door without waiting for the police to get there first?

[Purvis-Gilliam]: Well, there wasn't anything to say that I couldn't do that, so – I'm just there to pick up my kids. As you can see, I was in business attire like I am today, I was a banker, at the time –

[The Commonwealth]: I didn't –

[Purvis-Gilliam]: And I had on flip flops. So I'm not there to cause no big confusion, I'm just there to pick up my kids. That was it.

Q [The Commonwealth]: But there is something that says you can't do that.

A [Purvis-Gilliam]: I called the cops.

Q: Excuse me. Let me ask the questions.

A: Go ahead.

Q: There is something that says you can't do that, and that's the custody agreement.

A: It doesn't say you can't do that, it just stipulates where the kids are supposed to be. So since they weren't at the place that they were supposed to be, which was school. The kids had absolutely no reason to be held home from school, except for the fact it was a devious plan, because he already asked for that [sic] kids that weekend, which was not his weekend—

Q: And –

A: -- and he had emails to that effect, that June the 1st was not his day –

Q: Ms. –

A: and he held the kids back, just so I could not pick them up from school.

Q: This was all a devious plan. Got it.

A: And he held the kids back, just so I could not pick them up from school.

Q: You said that you were wedged in between –

A: And he even said it was –

The Court: If you're not going to answer his question.

[Purvis-Gilliam]: Oh, I'm sorry.

The Court: I'm sorry, this is my courtroom –

[Purvis-Gilliam]: I'm sorry.

The Court: -- in this courtroom, people asks questions and witnesses answer.

[Purvis-Gilliam]: I'm sorry. I thought I was –

The Court: We are going to take a two-minute break.

[Purvis-Gilliam]: I'm sorry, Your Honor.

(Brief Recess)

[The Commonwealth]: I don't have any further questions.

The Court: Any redirect, based on that.

[Defense Counsel]: I do not, Your Honor.

The Court: Ma'am, you may step.

(Witness excused).

N.T., Trial, 70-73.[3]

---

3 Purvis-Gilliam argues that the court's admonishments to her are like a statement that our Supreme Court rendered as improper in **Commonwealth v. Hales**, 119 A.2d 520, 521 (Pa. 1956). We find this to be inapposite to the instant case. First, in **Hales**, the improper statement of the trial court was directed at counsel, not the defendant. Secondly, while the Court concluded that the statement was improper, this was not the reasoning for the Court's ultimate decision to reverse the judgment of sentence and grant a new trial. Rather, the **Hales** Court concluded that reversal was necessary due to the
*(Footnote Continued Next Page)*

Purvis-Gilliam has not shown that the trial court asked questions or made comments warranting a new trial. As to the second instance Purvis-Gilliam cites, she incorrectly states that the court interrupted defense counsel's cross-examination. Instead, the court interrupted the Commonwealth for asking an inappropriate question. Regarding the remaining excerpts from trial, we conclude that none of these instances evidence judicial bias. It was not improper for the trial judge to explain the rules of the court to the Commonwealth's witness, nor was it improper for the court to admonish Purvis-Gilliam for her failure to answer the Commonwealth's question. Furthermore, a review of the entire record shows that the court did not interrupt Purvis-Gilliam's direct examination testimony or make any disparaging comments during her testimony. *See* N.T., Trial, at 64-67. To the extent Purvis-Gilliam claims that the court addressed her in a different tone than that used with the Commonwealth's witness, we cannot infer any tone from the cold record, and the judge's questions and comments on their face do not rise to such a level as to require a new trial. ***See Commonwealth v. Abu-Jamal***, 720 A.2d 121, 124 n.3 (Pa. 1998) ("Appellate decisions are made from cold records and prior rulings"). This issue is meritless.

Judgment of sentence affirmed.

_____

admission of irrelevant and prejudicial evidence related to the defendant's aunt being imprisoned for murder. ***See id.*** at 520-21.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 1/6/2023