J-S62025-17

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| CARRINGTON KEVON JOSEPH, | : | |
| | : | |
| Appellant | : | No. 823 MDA 2017 |

Appeal from the PCRA Order May 11, 2017
in the Court of Common Pleas of Lancaster County
Criminal Division at No(s): CP-36-CR-0002224-2014

BEFORE:   STABILE, PLATT,* and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:          **FILED JANUARY 18, 2018**

Carrington Kevon Joseph (Appellant) *pro se* appeals from the order entered May 11, 2017, which denied his petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546.  We affirm.

The trial court summarized the facts of this case.

> At trial, the Commonwealth established the following, gruesome facts.  On May 2, 2014, [Appellant] stabbed the victim, his wife, more than eighty (80) times.  The majority of the wounds were to the victim's abdomen, neck, and head.  During the attack, [Appellant] broke two knives and made multiple trips to the kitchen to retrieve additional knives.  At one point, the victim attempted to stagger out of the apartment's front door and, as the victim's family attempted to assist her, [Appellant] pointed the knife at them and told them to move back before they too got stabbed.  [Appellant] then dragged the victim back into the apartment and closed the door to continue his attack.  During the majority of this extended attack, the victim was laying [*sic*] helplessly on the ground.  [Appellant's] infant children were seated in their car seats in the room in which the attack took place.  [Appellant] was described as calm throughout this whole

*Retired Senior Judge assigned to the Superior Court.

incident and, after being taken into custody, calmly recounted these facts, in great detail, with little remorse shown.

Trial Court Opinion, 1/18/2016, at 2-3 (internal citations omitted).

Appellant was arrested and charged with homicide. In exchange for waiving his right to a jury trial, the Commonwealth agreed not to pursue the death penalty. Appellant's trial began on October 1, 2015, and then continued from November 9 to 12, 2015. At trial, Appellant did not testify, but counsel's cross-examination of witnesses and closing argument focused on Appellant's position that he should be acquitted based upon self-defense. On November 12, 2015, the trial court convicted Appellant of first-degree murder, and on December 15, 2015, he was sentenced to life in prison without the possibility of parole.

Appellant did not file a post-sentence motion, but timely filed a direct appeal. On July 14, 2016, a panel of this Court affirmed Appellant's judgment of sentence. ***Commonwealth v. Joseph***, 154 A.3d 856 (Pa. Super. 2016) (unpublished memorandum). Specifically, this Court concluded the evidence was sufficient to sustain Appellant's conviction and held that "Appellant's overall conduct was not the result of a heated exchange between the victim and him, nor were his actions the product of self-defense."[1] ***Id***. at 4.

_____

[1] Of note, this Court pointed to the following facts: (1) that Appellant, during the attack, "had the wherewithal to stop his brutal attack [and] retrieve additional knives;" (2) that emergency personnel had to remove a knife left lodged in the victim's back as it was hindering CPR; and (3) that Appellant

On September 12, 2016, Appellant filed *pro se* a PCRA petition. Counsel was appointed, and on December 23, 2016, counsel filed a petition to withdraw as counsel and no-merit letter pursuant to **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988), and **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988) (*en banc*). On March 21, 2017, the PCRA court issued a notice pursuant to Pa.R.Crim.P. 907 of its intent to dismiss the petition in 20 days without a hearing. Appellant timely filed *pro se* a response, and on May 11, 2017, the PCRA court dismissed Appellant's petition and permitted counsel to withdraw. Appellant filed a notice of appeal.[2] The PCRA court did not order Appellant to file a concise statement, but did file an opinion indicating its reliance on the memorandum accompanying its Pa.R.Crim.P. 907 notice.

On appeal, Appellant sets forth nine issues for our review. We address these issues mindful of the following. In reviewing an appeal from the denial of PCRA relief, "[w]e must examine whether the record supports the PCRA

_____

"was able to recount calmly and methodically his actions to police shortly" after the attack. **Id**. at 3, 4.

[2] The notice of appeal was docketed on May 10, 2017, one day before the PCRA court issued its notice dismissing Appellant's petition. It appears Appellant was attempting to appeal prematurely from the Pa.R.Crim.P. 907 notice. However, because a subsequent final order was entered, we need not quash this appeal. **See Commonwealth v. Swartzfager**, 59 A.3d 616 (Pa. Super. 2012) (holding that pursuant to Pa.R.A.P. 905(a)(5), this Court does not have to quash a notice of appeal filed from a Pa.R.Crim.P. 907 notice as long as a final order dismissing the PCRA petition was entered subsequently).

court's determination, and whether the PCRA court's determination is free of legal error. The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record." ***Commonwealth v. Mikell***, 968 A.2d 779, 780 (Pa. Super. 2009) (quoting ***Commonwealth v. Lawrence***, 960 A.2d 473, 476 (Pa. Super. 2008) (citations omitted)). Since most of Appellant's claims concern the ineffective assistance of trial counsel, the following principles apply.

> It is well-established that counsel is presumed to have provided effective representation unless the PCRA petitioner pleads and proves all of the following: (1) the underlying legal claim is of arguable merit; (2) counsel's action or inaction lacked any objectively reasonable basis designed to effectuate his client's interest; and (3) prejudice, to the effect that there was a reasonable probability of a different outcome if not for counsel's error.
>
> The PCRA court may deny an ineffectiveness claim if the petitioner's evidence fails to meet a single one of these prongs. Moreover, a PCRA petitioner bears the burden of demonstrating counsel's ineffectiveness.

***Commonwealth v. Franklin***, 990 A.2d 795, 797 (Pa. Super. 2010) (internal citations omitted).

Appellant first claims that trial counsel was ineffective for failing to file a motion to suppress his confession. Appellant's Brief at 10-15. Appellant argues that he was in custody when he gave his statement to police, and he was not provided with proper warnings pursuant to ***Miranda v. Arizona***, 384 U.S. 436 (1966). Specifically, he contends that the detective's failure to request that Appellant sign the ***Miranda*** waiver form rendered his statement

inadmissible and counsel was ineffective for failing to pursue this claim. ***Id***. at 14.

In considering this issue, "[t]he pertinent question is whether the defendant in fact knowingly and voluntarily waived the rights delineated in the ***Miranda*** case. Waiver can be clearly inferred from the actions and words of the person interrogated." ***Commonwealth v. Bomar***, 826 A.2d 831, 843 (Pa. 2003) (internal citations and quotation marks omitted).

The PCRA court offered the following.

> After a review of [Appellant's] ***Miranda*** waiver, it is apparent that the waiver was voluntary and intelligent. At the [out]set, [Appellant] was informed by Detective Freysz about the subject matter of the interrogation and was read his ***Miranda*** rights. Detective Freysz then read the waiver form to [Appellant]. In response to each ***Miranda*** warning, [Appellant] answered appropriately, thus demonstrating an outward manifestation that he understood the nature of his decision. [Appellant] also initialed beside each one of the answers that the written answers were his own. Although [Appellant] did not print and sign his full name at the bottom of the waiver form, Detective Freysz testified that this was because [Appellant] had difficulty writing his initials due to the injuries he suffered.

PCRA Court Opinion, 5/21/2017, at 8.

The PCRA court's conclusions are supported by the record. Detective Freysz testified about Appellant's ***Miranda*** warnings and waiver. ***See*** N.T., 11/10/2015, at 208-215. In addition, even though Appellant could not sign his name due to the lacerations on his hands, he was able to read the paragraph on the form. ***Id***. at 213. Based on the foregoing, we agree with the PCRA court that there is no arguable merit to Appellant's position that trial

counsel was ineffective for failing to file a motion to suppress his confession on this basis.

Appellant next contends that trial counsel was ineffective for counseling him to waive his right to a jury trial. Appellant's Brief at 16-19. Specifically, Appellant argues that the fact he was taking certain medication rendered his waiver unknowing and involuntary, and trial counsel was ineffective for permitting him to waive this right. *Id*. at 18.

> [W]hen a defendant seeks to collaterally attack his waiver of a jury trial, on grounds that it was caused by the ineffective assistance of his trial counsel, to prove prejudice, he must demonstrate a reasonable probability that but for counsel's constitutionally deficient service, the outcome of the waiver proceeding would have been different, *i.e.*, that he would not have waived his right to a jury trial.

*Commonwealth v. Mallory*, 941 A.2d 686, 704 (Pa. 2008).

Instantly, Appellant makes no claim whatsoever that he would not have waived his right to a jury trial; rather, he merely claims counsel was ineffective for not investigating his mental health. Moreover, as noted *supra*, the Commonwealth agreed not to pursue the death penalty in exchange for Appellant's jury trial waiver. *See* N.T., 10/1/2015, at 3. Thus, counsel had a reasonable basis to recommend Appellant waive his right to a jury trial.[3]

---

[3] We recognize that generally an evidentiary hearing is required to ascertain counsel's basis for his or her advice to a defendant. *Commonwealth v. Hanible*, 30 A.3d 426, 442 (Pa. 2011). However, in certain cases, such advice is apparent from the record. *Id*. This is such a case.

Therefore, we conclude that counsel cannot be ineffective on this basis, and Appellant is not entitled to relief on this issue.

On a related note, in Appellant's third issue, he claims that trial counsel was ineffective for failing to request a competency hearing. Appellant's Brief at 20-21. According to Appellant, he was taking "psychotropic medications during all criminal proceedings in this matter, and these medications altered Appellant's ability to have assisted trial counsel with a defense." *Id*. at 20.

> A defendant's competency is an absolute and basic condition of a fair trial, and conviction of a legally incompetent defendant violates his constitutionally guaranteed due process rights. Section 402(a) of the Mental Health Procedures Act, provides that a defendant is legally incompetent if he or she is substantially unable to understand the nature or object of the proceedings against him or her or to participate and assist in his or her defense. Stated otherwise, the relevant question is whether the defendant has sufficient ability at the pertinent time to consult with counsel with a reasonable degree of rational understanding, and have a rational as well as a factual understanding of the proceedings.
>
> *Commonwealth v. Appel*, 689 A.2d 891, 898-899 ([Pa.] 1997) (internal citations, quotations, modifications and footnotes omitted). However, a defendant's "apparent lack of cooperation and failure to heed ... counsel's advice [does] not establish a prima facie case for legal incompetency." *Commonwealth v. Mayer*, [] 685 A.2d 571, 573 ([Pa. Super.] 1996).

*Commonwealth v. Manuel*, 844 A.2d 1, 8 (Pa. Super. 2004).

Instantly, the PCRA court concluded that "there is no evidence supporting [Appellant's] claim." PCRA Court Opinion, 5/21/2017, at 10.

- 7 -

[Appellant's] interview with the police demonstrates that he was []cognizant to the circumstances surrounding the crime, as he was responsive to questions posed and understood the *Miranda* rights [that] were read to him. Further, [Appellant] graduated from high school and attended community college. [Appellant] further testified that he had never been treated for mental illness and, although he stated he was taking psychotropic medication, [Appellant] affirmed that the medicine did not interfere with his ability to understand court proceedings. [Appellant] presents no evidence to support his claim, and the record clearly contradicts [Appellant's] contention that he did not understand the nature of the proceedings. As such, this claim is without merit.

*Id*. at 11. (internal citations omitted).

Once again, the PCRA court's conclusions are supported by the record. Appellant did state that he was taking prescription medications during the jury trial waiver colloquy. N.T., 10/1/2015, at 5. However, he also stated that he had never been treated for mental illness and that he understood the discussion they were having that morning. *Id*. Appellant has presented no information that would have led counsel to believe Appellant was incompetent at any point during his representation. Thus, we agree with the PCRA court that there is no arguable merit to Appellant's position that trial counsel was ineffective for failing to request a competency hearing.

Appellant's next claim relates to potential impeachment evidence for a Commonwealth witness. Appellant's Brief at 22-24. By way of background, at trial, the Commonwealth called Porschia Garcia to testify as an eyewitness. She lived across the street from Appellant and the victim. She testified that she heard screaming and went outside and saw blood on the foot of the

victim's sister. N.T., 11/9/2015, at 101-102. She testified that she and the victim's sister tried to help the victim, but Appellant dragged the victim back into his house.

According to Appellant, Garcia had "prior arrests and convictions which arrests and convictions could have been used for impeachment purposes." Appellant's Brief at 23. Appellant contends that the Commonwealth failed to disclose this information in violation of ***Brady v. Maryland***, 373 U.S. 83 (1963). In addition, Appellant argues that counsel was ineffective for failing to discover this information.

A claim that the Commonwealth failed to disclose ***Brady*** material is both cognizable under the PCRA and applicable to impeachment evidence. ***Commonwealth v. Simpson***, 66 A.3d 253, 266 (Pa. 2013). "However, for a defendant to be entitled to a new trial based on the prosecution's failure to disclose information relating to a witness'[s] credibility, the defendant must demonstrate that the reliability of the witness may well be determinative of his guilt or innocence." ***Id***. (internal citation and quotation marks omitted).

Instantly, in addition to Garcia, the Commonwealth produced two additional eyewitnesses, the victim's sister and another next door neighbor. Both testified to circumstances that were consistent with Garcia's account. ***See*** N.T., 11/9/2015, at 34-57, 87-99. In addition, the Commonwealth produced a host of physical evidence in support of its position that the victim was stabbed over 80 times, while Appellant did not suffer one stab wound.

Accordingly, even if admissible evidence about Garcia's prior arrests or convictions existed, and was discovered by counsel or disclosed by the Commonwealth, the outcome of the trial would not have been different. Accordingly, there was no **Brady** violation and counsel was not ineffective for failing to discover this information.

Appellant next claims that trial counsel was ineffective for failing to pursue the defense of imperfect self-defense. Appellant's Brief at 25-26. According to Appellant, trial counsel knew that the victim was the aggressor and that Appellant acted in a "[heat] of passion moment." **Id**. at 25. Appellant claims he "never formed any intent to kill, [he] only formed an intent to protect himself, in the heat of passion, based upon the circumstances that transpired in the heat of the moment." **Id**. at 26.

> A defense of "imperfect self-defense" exists where the defendant actually, but unreasonably, believed that deadly force was necessary. However, all other principles of self-defense must still be met in order to establish this defense. The requirements of self-defense are statutory: "The use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion." 18 Pa.C.S.[] § 505(a). If the defender did not reasonably believe deadly force was necessary[,] he provoked the incident, or he could retreat with safety, then his use of deadly force in self-defense was not justifiable. A successful claim of imperfect self-defense reduces murder to voluntary manslaughter.

**Commonwealth v. Truong**, 36 A.3d 592, 599 (Pa. Super. 2012) (some internal citations and quotation marks omitted).

- 10 -

Instantly, the evidence established that Appellant stabbed the victim more than 80 times while Appellant did not incur one stab wound. This fact alone is sufficient to establish that Appellant's belief deadly force was necessary was unreasonable. In addition, he used multiple knives over a period of time and dragged the victim back inside the house when she tried to escape. Thus, the evidence established that Appellant could have retreated safely even if the victim were the aggressor. Thus, we conclude there is no arguable merit to Appellant's position that trial counsel was ineffective for failing to offer a defense of imperfect self-defense. *See id*. (holding that the evidence was sufficient to establish that Truong used more force than necessary to defend himself where "[t]estimony was presented that [Truong] was at least seven inches taller than the victim and that [he] had stabbed the victim 19 times all over the front and back of his torso"). Accordingly, Appellant is not entitled to relief.

Appellant next contends that trial counsel was ineffective for "coercing" Appellant not to testify on his own behalf. Appellant's Brief at 28. Appellant argues that his testimony would have given him "the opportunity to explain the events leading up to the homicide and that" counsel advised Appellant improperly that this testimony would not be in his best interest. *Id*. at 29-30. According to Appellant, counsel wished for Appellant not to testify in order to "expedite the trial proceedings." *Id*. at 30.

"In order to succeed on a claim that counsel was ineffective for failing to put [a defendant] on the stand, [an] appellant must prove either: (1) that counsel interfered with the defendant's right to testify, or (2) that counsel gave specific advice so unreasonable as to vitiate a knowing and intelligent decision to testify on his own behalf." ***Commonwealth v. Lawson***, 762 A.2d 753, 755 (Pa. Super. 2000) (internal citation and quotation marks omitted). To the extent Appellant is claiming that counsel interfered with Appellant's right to testify, that claim is belied by the record.

At trial, the trial court informed Appellant that counsel had indicated that it was Appellant's wish that he testify on his own behalf. N.T., 11/10/2015, at 276. When the trial court then went on to colloquy Appellant about this decision, Appellant was asked if he believed he had "sufficient opportunity to confer with counsel with regard" to his testifying. ***Id***. Appellant responded, "Not really." ***Id***. at 277. The trial court called a recess, and after about 15 minutes, Appellant and counsel returned to the courtroom. At that point, the defense rested, and the trial court continued the colloquy of Appellant about his new decision not to testify. Specifically, Appellant stated that he was "comfortable" with the changed decision. ***Id***. at 278. Based on the foregoing, the record shows that Appellant had every opportunity to exercise his right to testify, and we cannot agree with Appellant trial counsel interfered with this right.

Moreover, Appellant has not suggested trial counsel offered any advice that was "so unreasonable as to vitiate a knowing and intelligent decision" by Appellant. *Lawson*, 762 A.2d at 755. According to Appellant, he should have testified because he had no prior convictions for which he could be impeached. Appellant's Brief at 30. However, Appellant neglects to consider the myriad of reasons as to why his testimony would not have been helpful to his cause. While Appellant may not have been impeached by prior convictions, the Commonwealth would have had the opportunity to cross-examine him about this gruesome attack. Accordingly, we conclude that Appellant has not presented any evidence to support a claim that trial counsel's advice was so unreasonable that Appellant's decision was not knowing and intelligent. *See Commonwealth v. Schultz*, 707 A.2d 513, 520 (Pa. Super. 1997) ("While, in retrospect, [Schultz] may believe that her failure to testify prejudiced her, the fact remains that [her] decision was fully informed and voluntary."). Based on the foregoing, we conclude that Appellant is not entitled to relief on this claim.

Appellant next contends that the Commonwealth again violated *Brady* "by withholding of [evidence that] the victim['s] fingerprints [were] found on the murder weapon, namely the knife used in the homicide." Appellant's Brief at 31. "To establish a *Brady* violation, appellant must demonstrate that the evidence at issue was favorable to him, because it was either exculpatory or could have been used for impeachment; the prosecution either willfully or

inadvertently suppressed the evidence; and prejudice ensued." ***In re R.D.***, 44 A.3d 657, 675 (Pa. Super. 2012).

Here, the PCRA court concluded that this evidence was not exculpatory: "[Appellant] fails to prove how the victim's fingerprints on a kitchen knife located in her home exculpates any guilt." PCRA Court Opinion, 5/21/2017, at 14. The record supports this conclusion. Where Appellant stabbed the victim over eighty times without being stabbed once himself, the existence of the victim's fingerprints on her own kitchen knives is certainly not material to his guilt or innocence. Accordingly, we agree with the PCRA court that this claim fails.

Appellant next argues that trial counsel was ineffective for failing to pursue a Rule 600 motion. "Appellant maintains that he was not brought to trial in a timely manner under Rule 600 and trial counsel was ineffective for failure to file a motion to dismiss the charges for violating Appellant's [right]." Appellant's Brief at 33.

The Pennsylvania Rules of Criminal Procedure provide that a defendant must be brought to trial within 365 days after the complaint is filed. Pa.R.Crim.P. 600. Excludable time and excusable delay are taken into account when calculating the deadline within which a defendant must be brought to trial. Excludable time includes delays attributable to a defendant or his counsel. Excusable delay includes delays that occur beyond the control of the Commonwealth and despite its due diligence. ***Commonwealth v. Goldman***,

70 A.3d 874, 879 (Pa. Super. 2013). Dismissal is required only when the Commonwealth fails to bring a defendant to trial within 365 days, with the deadline adjusted to take into account all excludable time and excusable delay. *Id*. at 880.

In the instant case, the written complaint was filed against Appellant on May 2, 2014. Hence, Appellant's trial was required to commence by May 2, 2015. *See* Pa.R.Crim.P. 600(A)(2)(a). The trial actually commenced on October 1, 2015, which is 153 days late.

On June 12, 2014, the Commonwealth filed notice of intent to seek the death penalty, and the record shows that counsel for Appellant was appointed on June 28, 2014. On July 30, 2014, counsel for Appellant requested to continue the trial until November 30, 2014. That motion was unopposed by the Commonwealth and granted by the trial court. Thus, the 124 days between July 30 and November 30, 2014, is clearly excludable time. *See* Pa.R.Crim.P. 600(C)(3)(a)(ii).

It is not clear what happened after November 30, 2014, but on January 16, 2015, the docket shows an order rescheduling the trial until May 19, 2015. Then, on March 13, 2015, there is an order rescheduling trial until November 6, 2015. According to *Turner*/*Finley* counsel, these delays were at the request of Appellant. *Turner*/*Finley* Letter, 12/23/2016, at 13 (unnumbered).

Our review of the record reveals that it is not clear if the scheduling changes were due to Appellant's unavailability or judicial unavailability. To the extent Appellant requested and was granted continuances, that time is clearly excludable. Moreover, "[j]udicial delay may justify postponing trial beyond the adjusted run date if the Commonwealth was prepared to commence trial prior to the expiration of the mandatory period but the court was unavailable because of scheduling difficulties and the like." ***Commonwealth v. Preston***, 904 A.2d 1, 14 (Pa. Super. 2006) (internal quotation marks omitted). Here, the record does not support a conclusion that the Commonwealth was anything other than prepared to go to trial. Accordingly, we conclude there is no arguable merit to Appellant's position that he would have prevailed on a Rule 600 motion, and he is not entitled to relief.

Lastly, we turn to Appellant's claims that the evidence was insufficient to sustain his conviction and that the verdict was against the weight of the evidence. Appellant's Brief at 34-35. "[A]n appellant may not raise allegations of error in an appeal from the denial of PCRA relief as if he were presenting the claims on direct appeal."[4] ***Commonwealth v. Price***, 876 A.2d 988, 995

---

[4] Appellant does not present either issue under the guise of the ineffective assistance of counsel. Moreover, this Court, on direct appeal, concluded that the evidence was sufficient to sustain Appellant's conviction. ***See Joseph***, 154 A.3d 856. In addition, Appellant did not file a post-sentence motion; therefore, his weight-of-the-evidence claim would have been waived. ***See*** Pa.R.Crim.P. 607(A).

(Pa. Super. 2005). Because these claims should have been presented on direct appeal, Appellant is not entitled to relief.

For the foregoing reasons, we conclude the PCRA court's denial of relief to Appellant was proper. Accordingly, we affirm the order of the PCRA court.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 01/18/2018