J-S30012-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DANNY SWIFT, | |
| Appellant | No. 1165 WDA 2017 |

Appeal from the Judgment of Sentence Entered August 3, 2017
In the Court of Common Pleas of Erie County
Criminal Division at No(s): CP-25-CR-0003503-2016

BEFORE:  BENDER, P.J.E., STABILE, J., and STRASSBURGER, J.[*]

MEMORANDUM BY BENDER, P.J.E.:             **FILED AUGUST 14, 2018**

Appellant, Danny Swift, appeals from the judgment of sentence of, *inter alia*, an aggregate term of ten to twenty months' imprisonment, imposed after he was convicted of multiple counts of animal fighting and related offenses. We affirm.

The trial court summarized the procedural history and factual background of this case as follows:

> On June 22, 2017, following a four-day jury trial, Appellant … was convicted of three counts of Animal Fighting,[1] one count of Possession of Animal Fighting Paraphernalia,[2] and one count of Possessing Instruments of Crime.[3]  The [c]ourt convicted Appellant of seven counts of Cruelty to Animals, a summary offense.[4]  On August 3, 2017, Appellant was sentenced to an aggregate [term] of … 10 … months to … 20 … months of incarceration followed by 8 years of probation….

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.[] § 5511(h.1).

[2] 18 Pa.C.S.[] § 5511(h.2).

[3] 18 Pa.C.S.[] § 907(a).

[4] 18 Pa.C.S.[] § 5511(c)(1).

The [c]ourt imposed a total fine of $50.00 for the summary offenses…. The [c]ourt directed Appellant to pay restitution in the amount of $54,692.63.

On August 3, 2017, Philip B. Friedman, Esq., entered an appearance on behalf of Appellant. On August 8, 2017, Appellant's trial and sentencing counsel, Anthony H. Rodrigues, Esq., timely filed a [n]otice of [a]ppeal.[5] On August 11, 2017, the [c]ourt entered a [Pa.R.A.P.] 1925(b) [o]rder directing Appellant to file a [s]tatement of [m]atters [c]omplained of on [a]ppeal in 21 days. On September 20, 2017, Attorney Rodrigues filed a [m]otion to [w]ithdraw as [c]ounsel. On September 29, 2017, the Superior Court excused Attorney Rodrigues from his representation of Appellant, and recognized Attorney Friedman as counsel of record. As no [Rule] 1925(b) [s]tatement had been filed, on October 6, 2017[,] the [c]ourt issued a brief [Rule] 1925(a) [o]pinion. On October 9, 2017, Appellant filed a motion for additional time within which to file a [Rule] 1925(b) statement. The basis for the motion was Appellant's counsel did not receive the [c]ourt's [Rule] 1925(b) [o]rder[,] and transcription of trial proceedings was completed on October 9, 2017. The Commonwealth did not oppose the request. In the interests of judicial economy, on October 9, 2017[,] the [c]ourt rescinded the original [Rule] 1925(a) [o]pinion and directed Appellant to file a [Rule] 1925(b) [s]tatement by October 30, 2017.

[5] No post-sentence motion was filed.

On October 27, 2017, Appellant filed a [Rule] 1925(b) statement.

***

The facts relevant to this appeal are summarized as follows. On August 1, 2016 at approximately 8:30 p.m., the City of Erie Police were dispatched to Appellant's residence at 1047 West 28th Street, Erie, Pennsylvania[,] on the report a dog fight was in progress. Upon arrival, the police heard the sounds of dogs['] growling and crying. They observed two female pit bulls covered in blood and fighting in Appellant's back yard. An officer immediately called for

backup. The animal enforcement officer of the Erie Police Department, and animal safety representatives from the A.N.N.A. Shelter and the Humane Society of Northwestern Pennsylvania were also called to the scene.

In addition to the two fighting dogs, the police found numerous other dogs in Appellant's back yard that evening. Each dog required veterinary care. The dogs were removed for their safety and transported for immediate veterinary attention. Appellant permitted certain police officers and other responders to enter the residence. Several more dogs were found inside.[6] The police obtained a warrant to search Appellant's residence.

> [6] There was a discrepancy in the … testimony as to whether seven dogs or five dogs were found inside Appellant's residence that evening.

The following day, on August 2, 2016, the police executed the search warrant. The police were accompanied by others including Lisa Stiles, Chief Investigating Officer of the Erie County Humane Society. [Officer] Stiles was the Humane Society representative who assisted the police at Appellant's residence the previous evening. During the search, animal fighting paraphernalia was seized and photographs were taken. The police and [Officer] Stiles removed the dogs found inside the residence[,] which had been left behind the night before. Appellant was arrested and subsequently charged with three counts of [a]nimal [f]ighting (Counts One-Three), one count each of [p]ossession of [a]nimal [f]ighting [p]araphernalia (Count Four)[,] … [p]ossessing [i]nstruments of [c]rime (Count Five), and fourteen counts of [c]ruelty to [a]nimals (Counts Six-Nineteen).

Among the witnesses who testified at trial on behalf of the Commonwealth was [Officer] Stiles. [Officer] Stiles testified concerning her role on behalf of the Erie County Humane Society in responding to the dispatch to Appellant's residence on August 1, 2016[,] and in executing the search warrant and removing animals from the residence the following day. [Officer] Stiles also assisted in photographing the interior and exterior of Appellant's residence, and the dogs found on the property.

On direct[-]examination, [Officer] Stiles, *inter alia*, testified she recognized one of the dogs removed from Appellant's residence on August 2, 2016, "Bella[,"] as a dog she saw at Appellant's residence during her visits there in 2009 and 2010.

During cross[-]examination, Appellant's counsel elicited extensive testimony from [Officer] Stiles about her visits to Appellant's residence prior to the subject incident. This included testimony about the witness's prior encounters with the pit bull, "Bella[."]

In particular, Appellant's counsel elicited the following testimony from [Officer] Stiles during cross[-]examination. Prior to August … 2016, [Officer] Stiles went to Appellant's residence approximately four times when Appellant was home. [Officer] Stiles did not enter Appellant's residence on those occasions. [Officer] Stiles observed Appellant's dogs in his back yard in 2015. [Officer] Stiles went to Appellant's residence "a couple additional times" when Appellant was not home and simply knocked on his door. At no time prior to August of 2016 did [Officer] Stiles issue a citation to Appellant, seize one of his dogs, observe a dog that was injured, or make out a report of dog[]fighting. When [Officer] Stiles observed Bella at Appellant's residence in 2009 and 2010, Bella had no scars. When [Officer] Stiles saw Appellant's dogs in his back yard in 2015, she had no concerns about Appellant's care of the dogs.

Appellant's counsel additionally delved into the matter as follows:

Q: Now you're here today and all these injuries and all these bruises, right?

A: Correct.

Q: But last year you had no complaints whatsoever?

A: I -- correct.

Q: *One year before his arrest you had no complaints and you had been to his house, been in his back yard, right?*

A: Well, we had received complaints, that's why we were there, but I did not find violations, if that's what you're asking.

Q: Right.

A: Okay.

Q: Exactly.

A: Just wanted to clarify.

[N.T. Trial, 6/21/2017, at] 60-61.

- 4 -

In follow-up to [Officer] Stiles'[s] testimony during cross[-]examination, during [redirect-]examination the Commonwealth questioned [Officer] Stiles about the prior complaints lodged with the Humane Society. During this line of questioning, [Officer] Stiles only identified prior complaints. No testimony was elicited from [Officer] Stiles about the truth or merits of any prior complaint. Appellant's counsel objected to this testimony on the basis of hearsay. The [c]ourt overruled the objection and determined the testimony was not hearsay evidence.

During [recross-]examination, Appellant's counsel asked [Officer] Stiles about the merits of the prior complaints and the outcomes of any investigations concerning them. Appellant's counsel established that a number of prior complaints were not investigated because they did not involve allegations of animal cruelty. Other complaints were not investigated because Appellant was not home when a Humane Society representative visited the residence. Of the complaints that were investigated, Appellant's counsel successfully demonstrated that no complaint resulted in a citation or "ticket[."]

Trial Court Opinion (TCO), 12/18/2017, at 1-6 (some internal citations to record omitted; emphasis in original).

As mentioned above, Appellant filed a timely notice of appeal, and subsequently complied with the trial court's instruction to file a Rule 1925(b) concise statement. On appeal, Appellant raises a single issue for our review:

Whether the trial court erred in admitting evidence of prior anonymous complaints filed against [Appellant] for similar conduct[.]

Appellant's Brief at 4 (unnecessary emphasis and capitalization omitted).

Specifically, Appellant claims that the trial court should not have permitted Officer Stiles to testify about the previous complaints she received pertaining to Appellant and his dogs. *Id.* at 9, 17-18. According to Appellant, the complaints were clearly hearsay, as the Commonwealth introduced them for "the sole purpose of proving the truth of the matter asserted." *Id.* at 19.

He contends that Officer Stiles's testimony regarding the complaints "painted [him] as an abuser of dogs[,]" and "the Commonwealth used the hearsay evidence to attempt to prove a pattern of abuse so as to negate [his] position that the circumstances were isolated and unintentional." *Id.* at 19-20.

> At the outset, we acknowledge:

> The standard of review employed when faced with a challenge to the trial court's decision as to whether or not to admit evidence is well settled. Questions concerning the admissibility of evidence lie within the sound discretion of the trial court, and a reviewing court will not reverse the trial court's decision absent a clear abuse of discretion. Abuse of discretion is not merely an error of judgment, but rather where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will.

*Commonwealth v. Bishop*, 936 A.2d 1136, 1143 (Pa. Super. 2007) (internal citations omitted). In addition, "[h]earsay is defined as a statement other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." *Id.* (citing Pa.R.E. 801(c)).

Here, the trial court gave the following explanation as to why it permitted Officer Stiles to testify regarding the prior complaints she received:

> The limited testimony of [Officer] Stiles on [redirect-]examination about prior complaints lodged against Appellant did not constitute hearsay. The testimony was not offered to prove the truth or merits of any prior complaints. The Commonwealth elicited brief testimony about prior complaints in response to cross[-]examination by Appellant's counsel which attempted to establish the absence of prior complaints about Appellant and his dogs. As Appellant's counsel "opened the door" to this line of questioning, it was proper. At no time did the Commonwealth question [Officer] Stiles about the truth of the allegations of the prior

complaints. The [c]ourt correctly determined this testimony did not constitute inadmissible hearsay.

TCO at 8. We agree.

As mentioned above, on cross-examination, Officer Stiles testified:

[Appellant's attorney:] Now you're here today and all these injuries and all these bruises, right?

[Officer Stiles:] Correct.

[Appellant's attorney:] But last year you had no complaints whatsoever?

[Officer Stiles:] I -- correct.

[Appellant's attorney:] One year before his arrest you had no complaints and you had been to his house, been in his back yard, right?

[Officer Stiles:] Well, we had received complaints, that's why we were there, but I did not find violations, if that's what you're asking.

[Appellant's attorney:] Right.

[Officer Stiles:] Okay.

[Appellant's attorney:] Exactly.

[Officer Stiles:] Just wanted to clarify.

N.T. Trial, 6/21/2017, at 60-61.

Subsequently, on redirect-examination, Officer Stiles stated:

[The Commonwealth:] Okay. Now, let's go through the complaints lodged or that you were called to [Appellant's] residence. Let's go through those.

[Officer Stiles:] Okay. Should I give the date and what the complaint was lodged to our office?

[The Commonwealth:] Yes. I want you to go through what your notes are that you memorialized as part of your job in being an investigator.

[Officer Stiles:] Correct. Complaint came in on November 24th, 2009. The complaint stated that --

[Appellant's attorney:] Objection, hearsay, Judge.[1]

[The court:] Overruled. Go ahead.

[The Commonwealth:] Go ahead.

[Officer Stiles:] The complaint stated that there were four to -- seven to ten pit bulls at the location claiming that four to six of them at one time were kept in a pen out back without shelter, that there was a tarp across the top of it, that some dogs were tied in the pen, that some dogs are limping and may need vet care, and supposedly a male at the residence will pick up and throw the dogs by their collars.

[The Commonwealth:] All right. Next?

[Officer Stiles:] Next complaint was in February -- on February 5th, 2010, claiming that there were ten-plus pit bulls on the property. This is all at 1047 West 28th Street as well, the same residence we seized the dogs from on August 2nd.

[The Commonwealth:] All right.

[Officer Stiles:] That six of the dogs -- claimed that six of the dogs in the back yard on thick tow chains that rubbed their necks raw, not enough dog houses for the number of dogs that are back there, pups in a pen in the back yard, and the dogs can reach each other and fight, and the area smells of feces.

[The Commonwealth:] Next?

[Officer Stiles:] May 21st, 2010. I received a complaint saying that there are too many dogs on the property and that they bark.

[The Commonwealth:] All right.

_____

[1] Prior to this objection, Appellant had already lodged a hearsay objection to Officer Stiles's testimony regarding the prior complaints, which the trial court overruled. N.T. Trial, 6/21/2017, at 74 ("Your Honor, I'm going to object to hearsay, that the complaints if she's going to say what someone told her out of court offered to prove the truth of the matter asserted, then that would not be appropriate. That person should come in and testify.").

- 8 -

[Officer Stiles:] June 3rd, 2010, the complaint was five pit bull dogs that won't stop barking.

[The Commonwealth:] Go ahead.

[Officer Stiles:] September 6th, 2011, that there were four dogs on the property, supposedly one dog had bleeding around its face, chained in the back yard on thick tow chains, the dog houses need repaired, there was no water, and claiming that the owner was only there one time a week.

[The Commonwealth:] Next?

[Officer Stiles:] March 25th, 2013, a pit bull mix, one dog left inside a parked vehicle daily in a parking lot behind the Girard Pharmacy located at 83 Main Street in Girard.

[The Commonwealth:] Okay.

[Officer Stiles:] July 2nd, 2015. The complaint was supposedly a dog without shelter and a dog crying behind a shed, just one dog.

[The Commonwealth:] Okay.

[Officer Stiles:] July 21st, 2015. [O]ne pit bull dog outside, didn't know if the dog had access to shelter, food, or water, supposedly that it's tied outside 24/7. There is a male heard screaming at the dog to shut up and then he hears a chain rattling and the dog yelping and screaming.

February 2nd -- I'm sorry, my apologies. February 12th, 2016, regarding two pit -- two pit bull puppies and two pit bull dogs, supposedly two dogs chained outside, the pups are in and out of the dog house without food and water and they are barking.

And then May 31st of 2016. Eight pit bull dogs, supposedly no one around for at least 48 hours, one pup had its head stuck in the fencing in the back yard for at least ten minutes and is bleeding, no food and water, and the stench of feces is overwhelming.

*Id.* at 76-79.

We discern no abuse of discretion by the trial court. The record shows

that Officer Stiles simply identified complaints made against Appellant since

2009, in order to clarify that there had been concerns and complaints about Appellant's dogs prior to the incident in question. We view this testimony as a fair response to defense counsel's question about prior complaints on cross-examination, and his insinuation that none existed. As the trial court emphasizes, "[t]he Commonwealth did not question [Officer] Stiles about the merits of any complaints or the outcomes of any resulting investigation(s). No prior mistreatment was ever established or testified to on [redirect-]examination." TCO at 7; *see also* Commonwealth's Brief at 5 ("Because defense counsel cross[-]examined Officer Stiles at length about complaints lodged with the Humane Society, and emphasized [that] there existed no complaints only in the year prior to [Appellant's] arrest, it was proper to redirect the jury to the fact that there had been numerous complaints in which the Humane Society responded to [Appellant's] residence since 2009, seven years before his arrest.").[2] Thus, we agree that Officer Stiles's testimony about the prior complaints was not hearsay, as the complaints were not offered to prove the truth of the matter asserted.

Nevertheless, even if Officer Stiles's testimony was hearsay and should not have been admitted, we conclude such error was harmless. "[H]armless error is a technique of appellate review designed to advance judicial economy

---

[2] We note our disagreement with Appellant's assertion that "the Commonwealth does not dispute that the statements violated the [h]earsay [r]ule." Appellant's Reply Brief at 1. The Commonwealth indeed argues that the complaints were not offered for the truth of the matter asserted. *See* Commonwealth's Brief at 1, 2-3, 5-6.

by obviating the necessity for a retrial where the appellate court is convinced that a trial error was harmless beyond a reasonable doubt." **Commonwealth v. Sloan**, 67 A.3d 808, 812 n.4 (Pa. Super. 2013) (citation omitted; brackets in original).

Here, the trial court ascertained that no prejudice could have resulted from its ruling, as "[d]uring [recross-]examination, Appellant's counsel established that, as to the limited number of prior complaints investigated, none were found to have any merit." TCO at 8. Thus, "[n]o prior mistreatment of Appellant's dogs was established through [Officer] Stiles'[s] testimony." *Id.* Indeed, our review of the transcript shows that, on recross-examination, Officer Stiles testified that she never found any of the complaints to be true, and never issued Appellant a citation because of a complaint. *See* N.T. Trial, 6/21/2017, at 81-83.

In addition, we are persuaded by the Commonwealth's argument that "[t]he evidence proving [Appellant] guilty of the crimes charged was overwhelming." Commonwealth's Brief at 7. It outlined the extensive evidence supporting Appellant's guilt as follows:

> The first Erie Police Officer responding to the scene on a call of dog fighting was Cheryl Frey. She described for the jury her eyewitness account of watching one of [Appellant's] pit bills [*sic*] attacking another. She described the chains used to secure the dogs in [Appellant's] yard. She described wounds and abscesses on other dogs, the conditions of the yard, and [Appellant's] responses to the police presence on his property. Ruth Thompson, director of A.N.N.A. Shelter for unwanted or stray animals, testified as to the fresh wounds and older wounds found on the dogs removed from [Appellant's] home. She also described the

- 11 -

living conditions for the dogs within [Appellant's] house, including crates for housing which were too small for the dogs, urine and feces everywhere and, a wooden-slatted treadmill with a strap to keep the dog secure. She opined the circumstances of [Appellant's] ownership of the fourteen pit bulls at his residence was not consistent with a person raising the animals as pets. Dr. Jessica Bahl, veterinarian, testified she examined the seven dogs seized and in the care of the A.N.N.A. Shelter. The doctor described bite wounds, fresh scarring, older scarring, massive infection and cancer present in the dogs she examined, much of which had been unattended to for more than a few days. Dr[.] Jennifer Weaver, veterinarian, testified she examined the seven dogs seized and in the care of the Humane Society. She similarly described scabbing, hair loss, lacerations, multiple scars on the face, neck, and front limbs, some more than two months old. Finally, she described the dogs as being aggressive and having large defined muscles. [Appellant's] neighbor, Alyce Cruz, testified she witnessed [Appellant] on a number of occasions bring one dog at a time to a position under a tree branch and stand by as the dog jumped and bit onto a rope hanging from the tree, similar to the device introduced as Commonwealth's Exhibits 15A and 21. The dog would continue biting the device and hanging mid-air for twenty minutes or more at a time. Another of [Appellant's] neighbors, Dina Moore, also witnessed [Appellant's] dogs hanging by their teeth from a device similar to that displayed in Exhibit 21.

The jury also heard from Erie County Detective Anne Styn, who was qualified as an expert in computer forensics. Detective Styn opined her examination of numerous posts to a website in which the parties discussed many aspects of dog fighting, were in fact made by [Appellant.]

\*\*\*

[Appellant's] consciousness of guilt was revealed when Detective Styn testified that all of the … posts made by [Appellant] in the months and years prior to his arrest, were deleted within days of [Appellant's] arrest, and the only person who could have done so was one who knew the password of the person who made the original posts. That was no one other than [Appellant].

Humane Society Officer Stiles also read to the jury (from power point display) numerous posts of [Appellant's], aka "swiftnhbfighter[."] … [Officer] Stiles described at length, along

- 12 -

with photographic displays, the conditions of [Appellant's] dogs and home when on the premises pursuant to the search warrant.

The Commonwealth's final witness was Deborah Jugan, whose testimony was received as an expert in animal fighting. Ms. Jugan concluded within a reasonable degree of certainty [Appellant] was a dog fighter on the day of his arrest. She based that opinion on the evidence, ultimately received by the jury, as follows: the language and terms used by [Appellant] in the chat room postings as being identical to individuals involved in dog fighting, training, and breeding for that purpose[;] the circumstances under which the dogs [were] fighting in [Appellant's] backyard when Erie Police arrived on the scene[;] the significance of [Appellant's] having (and then removing) a wooden treadmill in his home[;] the significance of devices [Appellant] possessed such as a flirt pole/spring pole [and] tow chains[; and] why the nylon collars found with the dogs are indicative of dog fighting.

Commonwealth's Brief at 7-10 (internal citations omitted).[3] To the extent Appellant is concerned Officer Stiles's testimony indicated that he intentionally mistreated the dogs and portrayed him as "an abuser of dogs[,]" **see** Appellant's Brief at 19-20, any such prejudice is *de minimis* considering all of the other evidence introduced by the Commonwealth. Accordingly, we would deem harmless any error by the trial court in allowing Officer Stiles to testify about the prior complaints. No relief is due.

Judgment of sentence affirmed.

_____

[3] In his reply brief, Appellant does not dispute this summary of the Commonwealth's evidence, but instead argues that he produced evidence supporting his position that "some of the dogs had sustained injuries but not during dog[]fighting or training for dog[]fighting." Appellant's Reply Brief at 4; **see also** Appellant's Brief at 10 ("There was no direct evidence presented that [Appellant] engaged in dog fighting activities at the residence. Furthermore, the paraphernalia was subject to conflicting expert interpretation.").

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/14/2018