J-A12016-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| RODNEY HOWARD, JR. | : | |
| | : | |
| Appellant | : | No. 1714 WDA 2018 |

Appeal from the Judgment of Sentence Entered July 31, 2018
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0013050-2014

BEFORE:  KUNSELMAN, J., KING, J., and COLINS, J.[*]

MEMORANDUM BY KING, J.:                 **FILED SEPTEMBER 11, 2020**

Appellant, Rodney Howard, Jr., appeals from the judgment of sentence entered in the Allegheny County Court of Common Pleas, following his jury trial conviction for first-degree murder.[1]  We vacate the judgment of sentence and remand for an evidentiary hearing based upon Appellant's after-discovered evidence claim.

The relevant facts and procedural history of this appeal are as follows. On January 20, 2014, police received information that a man was shot to death on Rapidan Way in Pittsburgh.  Detectives went to the scene and found Hosea Davis ("Victim") with numerous gunshot wounds to the torso.  Medics

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 2502(a).

arrived shortly thereafter and pronounced Victim dead.

During their investigation, detectives discovered that Daniel Ray was an eyewitness to the shooting. Mr. Ray had gone to Rapidan Way to purchase drugs. (*See* N.T. Trial, 7/23-26/18, at 190). After consuming some alcohol, Mr. Ray purchased a bag of heroin from Victim. (*Id.* at 198-99). Upon receiving the heroin, Mr. Ray turned his back to Victim. (*Id.* at 200). Approximately twenty seconds later, Mr. Ray heard gunshots. (*Id.*)

Mr. Ray immediately dove into nearby bushes. (*Id.* at 237). From this position, Mr. Ray saw Appellant, wearing a gray, Champion sweatsuit with the hood pulled tightly over his head, Nike "Foams" sneakers, and glasses. (*Id.* at 203-04). Appellant also wore a mask that covered part of his face, from his nose to his chin. (*Id.* at 203). Mr. Ray recognized Appellant from the neighborhood, and Appellant had worn the same sweatsuit earlier that week. (*Id.* at 183-84, 202). Appellant was carrying an assault rifle, which he pointed at Victim. (*Id.* at 202). Mr. Ray watched as Appellant fired additional shots at Victim, who was lying on the ground. (*Id.* at 204-05). After the shooting, Appellant turned and walked through the gate to his residence. (*Id.* at 205).

The day after the shooting, detectives interviewed Mr. Ray and obtained his statement. (*Id.* at 278-79). During the interview, detectives showed Mr. Ray a photo array of eight men. (*Id.* at 280). Without hesitating, Mr. Ray selected Appellant's photo and identified him as the shooter. (*Id.* at 302). Appellant subsequently absconded, and U.S. Marshals did not apprehend him

until September 2014.  (*Id.* at 311).

The Commonwealth filed a criminal information charging Appellant with criminal homicide.[2]  On April 17, 2015, the Commonwealth filed a motion *in limine*, seeking permission for Mr. Ray to testify about a hearsay statement made by Appellant's father immediately prior to the shooting.  Specifically, Mr. Ray heard Appellant's father "call [Appellant] by name and tell him not to do it."  (Motion, filed 4/17/15, at ¶1).  On May 12, 2015, Appellant filed his own motion *in limine*, seeking to exclude testimony from Mr. Ray regarding a possible motive:

> Ray had heard that [Appellant's] girlfriend's home had been burglarized and a number of stamp bags were stolen.  The bags were marked "Income Tax."  [Appellant] was offering a reward to anyone who furnished him with information as to the identity of the burglar.

(Motion, filed 5/12/15, at ¶4(c)).  On May 15, 2015, the original jurist in this matter, Judge Randal Todd, ruled the statements at issue in the motions *in limine* were inadmissible.

On September 30, 2015, Appellant filed a motion to suppress additional statements he made to a jailhouse informant.  The court granted Appellant's suppression motion, and the Commonwealth immediately filed a notice of appeal.  This Court affirmed the suppression ruling on June 21, 2017.  Thereafter, the Commonwealth submitted a motion for disqualification,

---

[2] A separate charge of persons not to possess firearms was severed prior to trial.

requesting that Judge Todd recuse himself. Judge Todd granted the motion on June 13, 2018, and Appellant's case was reassigned to Judge Donna Jo McDaniel.

On July 16, 2018, Judge McDaniel conducted a hearing on pretrial motions. At that time, the parties revisited Judge Todd's ruling on the admissibility of the hearsay statement of Appellant's father. Judge McDaniel determined the statement "falls squarely under present sense impression and/or excited utterance. It will be admissible." (N.T. Hearing, 7/16/18, at 7). Appellant proceeded to a jury trial on July 23, 2018. During trial, the parties also revisited Judge Todd's ruling regarding evidence of Appellant's reward for information about the theft of his drugs. (*See* N.T. Trial at 174). Again, Judge McDaniel determined she was not bound by Judge Todd's prior ruling, and she permitted Mr. Ray to testify about Appellant's offer of a reward. (*Id.* at 177).

At the conclusion of trial, the jury convicted Appellant of first-degree murder. On July 31, 2018, the court sentenced Appellant to life imprisonment without parole. Appellant timely filed post-sentence motions on August 7, 2018. Before the court issued its ruling, Appellant requested to withdraw the pending motions. The court granted Appellant's request on November 29, 2018, and Appellant timely filed a notice of appeal on December 4, 2018. In January and February 2019, the court granted Appellant multiple extensions of time to file a Pa.R.A.P. 1925(b) concise statement of errors complained of

on appeal.[3]

Before submitting a Rule 1925(b) statement, Appellant learned that Mr. Ray had received a favorable plea deal for his own pending charges in light of his cooperation in Appellant's case. On March 18, 2019, Appellant filed a motion for new trial due to after-discovered evidence, claiming: 1) Mr. Ray testified that he was not promised leniency in exchange for his testimony against Appellant; 2) Mr. Ray entered his own guilty plea and was sentenced on July 31, 2018, after he testified against Appellant; 3) Appellant was unaware of Mr. Ray's guilty plea until February 2019; and 4) Appellant's counsel spoke with Mr. Ray's attorney, who confirmed his client received a favorable sentence due to his cooperation in Appellant's case. (**See** Motion, filed 3/18/19, at ¶¶5-16).[4] Consequently, Appellant requested a new trial or, in the alternative, an evidentiary hearing to create a record for his after-discovered evidence claim. On March 21, 2019, Appellant also filed a petition for remand with this Court, raising substantially similar arguments.

This Court denied the remand petition on April 2, 2019, and the trial

---

[3] While Appellant's Rule 1925(b) statement was pending, Judge McDaniel retired and the case was transferred to a third jurist, Judge Jeffrey Manning.

[4] Appellant's brief includes a copy of the Court of Common Pleas docket entries for Mr. Ray's case. The docket entries indicate Mr. Ray entered a guilty plea to possession of a controlled substance with intent to deliver and simple possession, and the Commonwealth withdrew related charges. (**See** Appellant's Brief at Appendix H). Following the entry of the plea, the court sentenced Appellant to probation. (**Id.**)

court denied Appellant's after-discovered evidence motion on April 15, 2019.

Appellant subsequently filed a timely Rule 1925(b) statement.

Appellant raises three issues for our review:

Did the second trial court err and violate the "coordinate jurisdiction rule" and the "law of the case doctrine" when it overruled the first trial court's rulings and permitted witness Daniel Ray to testify to statements that the first trial court already ruled were inadmissible?

Should the Superior Court remand this matter to the Court of Common Pleas for an evidentiary hearing based on after-discovered evidence showing that Daniel Ray received leniency on his criminal charges that were pending at the time of Appellant's trial in exchange for his cooperation with the Commonwealth and his trial testimony?

Were Appellant's federal and state due process rights violated when the Commonwealth failed to correct false testimony from Daniel Ray that it knew, or should have known, was false when Daniel Ray testified at trial that he was not getting anything in return, nor did he expect anything in return, for his testimony and cooperation with the Commonwealth?

(Appellant's Brief at 4).

In his first issue, Appellant argues Judge McDaniel violated the coordinate jurisdiction rule by permitting Mr. Ray to testify about matters that Judge Todd had already deemed inadmissible. Appellant contends the evidence Judge McDaniel relied on to support her rulings "was substantially the same as the evidence that [Judge Todd] relied on and there was no substantive change in the law to justify departing from [Judge Todd's] ruling." (*Id.* at 12). Appellant maintains Judge McDaniel's rulings attacked the "settled expectation that Appellant could proceed to trial with a strategy based

in part on the ruling that the two statements at issue were inadmissible." (*Id.* at 16). Appellant concludes this Court must vacate his judgment of sentence and remand the matter for a new trial without the evidence that Judge Todd had originally deemed inadmissible.

In response, the Commonwealth agrees that Judge McDaniel erred in admitting evidence that Judge Todd already excluded. The Commonwealth insists, however, "a new trial is not warranted because the court's error was harmless." (Commonwealth's Brief at 11). The Commonwealth emphasizes the strength of Mr. Ray's identification, noting Mr. Ray's testimony "was corroborated by strong circumstantial evidence." (*Id.* at 18). The Commonwealth acknowledges Mr. Ray was a drug addict in search of heroin on the day of the shooting, but it asserts "he had been clean for four years at the time of trial," and Mr. Ray "testified that he was clear-headed on the day of the crime." (*Id.* at 19-20). The Commonwealth concludes "the untainted evidence shows that Appellant was guilty beyond a reasonable doubt," and a new trial is not warranted pursuant to the harmless error doctrine. (*Id.* at 22). We agree with the Commonwealth.

Pennsylvania courts have "long recognized that judges of coordinate jurisdiction sitting in the same case should not overrule each others' decisions." *Commonwealth v. Starr*, 541 Pa. 564, 573, 664 A.2d 1326, 1331 (1995). "This rule, known as the coordinate jurisdiction rule, is a rule of sound jurisprudence based on a policy of fostering the finality of pre-trial

applications in an effort to maintain judicial economy and efficiency."

***Commonwealth v. Turner***, 73 A.3d 1283, 1286 (Pa.Super. 2013), *appeal denied*, 625 Pa. 649, 91 A.3d 162 (2014).

The coordinate jurisdiction rule falls within the ambit of the law of the case doctrine:

> This doctrine refers to a family of rules which embody the concept that a court involved in the later phases of a litigated matter should not reopen questions decided by another judge of that same court or by a higher court in the earlier phases of the matter. Among the related but distinct rules which make up the law of the case doctrine are that: (1) upon remand for further proceedings, a trial court may not alter the resolution of a legal question previously decided by the appellate court in the matter; (2) upon a second appeal, an appellate court may not alter the resolution of a legal question previously decided by the same appellate court; and (3) upon transfer of a matter between trial judges of coordinate jurisdiction, the transferee trial court may not alter the resolution of a legal question previously decided by the transferor trial court.

> *       *       *

> Further, the limitations on the law of the case doctrine and on the coordinate jurisdiction rule are virtually identical, thereby again suggesting that the Pennsylvania coordinate jurisdiction rule may be properly considered as part of the family of rules making up the law of the case doctrine. Departure from either of these principles is allowed only in exceptional circumstances such as where there has been an intervening change in the controlling law, a substantial change in the facts or evidence giving rise to the dispute in the matter, or where the prior holding was clearly erroneous and would create a manifest injustice if followed.

***Starr, supra*** at 574-76, 664 A.2d at 1331-32 (internal citations omitted).

Additionally, "[t]he doctrine of harmless error is a technique of appellate

review designed to advance judicial economy by obviating the necessity for a retrial where the appellate court is convinced that a trial error was harmless beyond a reasonable doubt." ***Commonwealth v. Thornton***, 494 Pa. 260, 266, 431 A.2d 248, 251 (1981). ***See also Commonwealth v. Yockey***, 158 A.3d 1246, 1254 (Pa.Super. 2017), *appeal denied*, 643 Pa. 686, 174 A.3d 567 (2017) (reiterating "an erroneous ruling by a trial court on an evidentiary issue does not require us to grant relief where the error was harmless"). The harmless error doctrine "is premised on the well-settled proposition that [a] defendant is entitled to a fair trial but not a perfect one." ***Thornton, supra*** at 266, 431 A.2d at 251 (quoting ***Lutwak v. United States***, 344 U.S. 604, 619, 73 S.Ct. 481, 490, 97 L.Ed. 593 (1953)).

"The Commonwealth has the burden of proving harmless error beyond a reasonable doubt." ***Commonwealth v. Wright***, 599 Pa. 270, 312, 961 A.2d 119, 143 (2008).

> Harmless error is established where either: 1) the error did not prejudice the defendant; 2) the erroneously admitted evidence was merely cumulative of other untainted evidence; or 3) where the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.

***Commonwealth v. Bishop***, 936 A.2d 1136, 1144 (Pa.Super. 2007), *appeal denied*, 597 Pa. 710, 951 A.2d 1159 (2008).

Instantly, Judge Todd determined the Commonwealth's evidence regarding Appellant's father's statement constituted inadmissible hearsay.

Judge Todd also ruled that testimony about Appellant offering a reward in exchange for the identity of the person who stole his drugs was inadmissible. Judge McDaniel subsequently overruled Judge Todd's rulings and permitted Mr. Ray to testify concerning the previously excluded evidence. In deciding to admit the evidence at issue, Judge McDaniel relied on the same facts as Judge Todd, there was no intervening change in the controlling law, and Judge Todd's original rulings were not clearly erroneous. Therefore, Judge McDaniel violated the coordinate jurisdiction rule. **See Starr, supra**.

Nevertheless, we agree with the Commonwealth's conclusion that this error was harmless. The record demonstrates that Mr. Ray saw the shooter wearing a gray sweatsuit, distinctive sneakers, and glasses. (**See** N.T. Trial at 203-04). Mr. Ray personally knew Appellant from their neighborhood, and he saw Appellant wearing the same gray sweatsuit during the week prior to the shooting. (**Id.** at 183-84, 202). Mr. Ray also noted that Appellant walked through the gate to his residence immediately after the shooting. (**Id.** at 205).

Circumstantial evidence corroborated Mr. Ray's testimony, including Appellant's flight from apprehension. **See Commonwealth v. Lukowich**, 875 A.2d 1169, 1173 (Pa.Super. 2005), *appeal denied*, 584 Pa. 706, 885 A.2d 41 (2005) (reiterating that where evidence exists that defendant committed crime, knew he was wanted, and fled or concealed himself, such evidence is admissible to establish consciousness of guilt). The Commonwealth also

submitted evidence regarding Appellant's cell phone records, which placed him near the crime scene around the time of the shooting. (**Id.** at 358-73). Additionally, Mr. Ray's testimony that he saw Appellant shoot Victim as he laid on the ground was corroborated by the medical examiner, who confirmed that Victim "had to be face down on the ground" based on the nature of the "exit wounds." (**Id.** at 114-15).

In sum, Mr. Ray's testimony identifying Appellant as the shooter was consistent with his initial statements to police, as well as the testimony of other witnesses. Mr. Ray's testimony regarding the crime scene, neighborhood, firearm, and other background matters was detailed and comprehensive. Here, the properly admitted and uncontradicted evidence of Appellant's guilt was so overwhelming that any error related to Judge McDaniel's admission of evidence could not have contributed to the verdict. **See Bishop, supra**. Accordingly, a new trial is not warranted based on the violation of the coordinate jurisdiction rule because the court's error was harmless. **See Thornton, supra**.

In his second and third issues, Appellant contends Mr. Ray received a favorable plea agreement in exchange for his testimony against Appellant. Appellant asserts his attorney did not learn about Mr. Ray's plea deal until March 2019, when the instant appeal was pending. Appellant insists he is entitled to relief based upon this after-discovered evidence. Appellant also emphasizes the Commonwealth agrees that remand for an evidentiary hearing

is appropriate under these circumstances.[5]

Further, Appellant argues Mr. Ray "testified on direct and cross examination that he was not seeking nor expecting favorable treatment regarding his pending criminal case in exchange for his" cooperation with Appellant's prosecution. (Appellant's Brief at 26) (citing N.T. Trial at 186-87, 251-53). Appellant claims the Commonwealth's failure to correct Mr. Ray's testimony or disclose the pending plea deal amounts to a due process violation, and Mr. Ray's testimony "could have affected the judgment of the jury." (Appellant's Brief at 27). Appellant concludes this Court must vacate the judgment of sentence and grant a new trial or, in the alternative, remand for an evidentiary hearing to develop the record regarding his after-discovered evidence claim. We agree that the best resolution is to remand this matter for the limited purpose of conducting an evidentiary hearing on Appellant's after-discovered evidence claim.

Pennsylvania Rule of Criminal Procedure 720 provides, "[a] post-sentence motion for a new trial on the ground of after-discovered evidence must be filed in writing promptly after such discovery." Pa.R.Crim.P. 720(C). Moreover, the Comment to Rule 720 explains "after-discovered evidence discovered during the direct appeal process must be raised promptly during

---

[5] The Commonwealth continues to agree that the case "should be remanded for an evidentiary hearing limited solely to the after-discovered evidence claim." (Commonwealth's Brief at 24).

- 12 -

the direct appeal process, and should include a request for a remand to the trial judge." Pa.R.Crim.P. 720, Comment.

The following principles apply to this Court's review of an after-discovered evidence claim:

> To warrant relief, after-discovered evidence must meet a four-prong test: (1) the evidence could not have been obtained before the conclusion of the trial by reasonable diligence; (2) the evidence is not merely corroborative or cumulative; (3) the evidence will not be used solely for purposes of impeachment; and (4) the evidence is of such a nature and character that a different outcome is likely. At an evidentiary hearing, an appellant must show by a preponderance of the evidence that each of these factors has been met in order for a new trial to be warranted. [Even if it appears] likely that a new trial is warranted …, procedure demands that the [trial] court develop the record and make that call in the first instance.

*Commonwealth v. Rivera*, 939 A.2d 355, 359 (Pa.Super. 2007), *appeal denied*, 598 Pa. 774, 958 A.2d 1047 (2008) (internal citations omitted).

Instantly, Appellant's filings concerning the after-discovered evidence claim demonstrate that Mr. Ray entered a guilty plea after he testified at Appellant's trial. At Appellant's trial, Mr. Ray denied that he would receive favorable treatment on his own charges due to his cooperation in Appellant's case. (*See* N.T. Trial at 186-87, 251-53). The purported statements from Mr. Ray's attorney, however, cast doubt on Mr. Ray's testimony in this regard.

On this record, Appellant presents a colorable claim of after-discovered evidence warranting further review by the trial court. *See Rivera, supra*. Accordingly, we vacate the judgment of sentence and remand for an

evidentiary hearing consistent with this memorandum. If a new trial is not required, the court shall re-impose the judgment of sentence as originally entered. ***See Rivera, supra*** at 359 (vacating judgment of sentence, remanding for evidentiary hearing regarding, *inter alia*, after-discovered evidence, and instructing trial court to re-impose judgment of sentence if new trial was not required).

Judgment of sentence vacated. Case remanded for further proceedings consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/11/2020